## Sewell and Allington v. Bennett and Levi.

(Decided April 16, 1920.)

### Appeal from Franklin Circuit Court.

1. Officers—Governor—Appointive Officers.—Where an act creating an office and officer gives the appointment of the officer to the Governor and there is no law requiring the Governor to send the name of the appointee to the Senate for its approval or rejection, he cannot do so; and if he should, neither his action nor that of the Senate would have any binding force on either the Governor or the appointee.

2. States—Legislature—Powers of in Appointment of Officers.—Where the legislature is not restrained by the Constitution, it may create offices and make the appointments itself, or give the right to appoint to the Governor or any other person or body, and it may provide that the appointing authority must submit his or its appointments to any person or body designated.

3. States—Legislature—Officers—Appointment Of.—When the power to appoint is given by the legislature to a described person or body, the authority so confided can not be surrendered to or transferred to any other person or body.

4. Statutes—Construction Of—When Different Statutes to be Read Together.—Statutes which are not inconsistent with one another and relate to the same subject matter should be construed together, and effect should be given to them all, although they con-

tain no reference to one another and were passed at different times.

5. Statutes—Construction Of—When Different Statutes to be Read Together.—The Workmen's Compensation Act created a board and provided that the Governor might appoint the board and did not require that he should send the name of his appointees to the Senate. but section 3750 of the Kentucky Statutes, providing that all persons appointed by the Governor shall hold office subject to the advice and consent of the Senate, must be read in connection with the act, as it only adds to or supplements its provisions.

6. Statutes—Construction Of.—An act which gave the Governor the right of appointment, but made no provision for sending the appointment to the Senate, did not give the Governor the exclusive right of appointment in view of section 3750.

7. Statutes—Construction Of—Meaning of the Words "Unless Otherwise Provided."—Where a statute declared that "unless otherwise provided," all appointments made by the Governor should be sent to the Senate, an act creating an officer that merely gave the appointment to the Governor did not make other provision in the meaning of or in conflict with the words "unless otherwise provided."

8. Statutes—Definitions—"Unless Otherwise Provided."—The word "otherwise" means in a different manner, or in another way, or contrarily.

9. Statutes—Construction Of—Names of Officers Appointed by the Governor to be Sent to the Senate—When.—Under section 3750, all appointments made by the Governor of officers not required to be elected by the people, whether to fill a vacancy or as original appointments, must be confirmed by the Senate, under section 3750, unless the act creating the officer otherwise provides.

10. Statutes—Contemporaneous Construction—Application Of.—The doctrine of contemporaneous construction is a useful aid in the interpretation of statutes of doubtful meaning, but in looking to this aid, the courts do not surrender to executive or other officers the power to interpret for themselves the meaning of statutes. They merely resort to contemporaneous construction as an aid when the statute is of doubtful meaning.

11. Statutes—Contemporaneous Construction—Application Of.—When the meaning of the statute is clear and its language free from ambiguity, and from its reading no mistake can be made as to its intention, no amount of contemporaneous construction will be allowed to give the statute a meaning or purpose inconsistent with the intention and meaning of the law as found in the statute itself.

HAZELRIGG & HAZELRIGG and CHARLES H. MORRIS for plaintiffs.

MOORMAN & WOODWARD for defendants.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Overruling motion to grant injunction.

This controversy is between N. B. Sewell and H. J. Allington, on the one side, and A. S. Bennett and Clyde R. Levi, on the other, each claiming places as members of the Workmen's Compensation Board.

It arose in this way: On April 1, 1918, Allington was appointed a member of the board for a term of four years, and on April 1, 1919, Sewell was appointed a member of the board for a term of four years. These appointments were made by Governor A. O. Stanley at a time when neither the general assembly nor the state senate was in session, and were what is commonly called vacation appointments.

In December, 1919, the term of office of Governor Stanley expired, and Governor Edwin P. Morrow took the office as his successor. In January, 1920, the legislature of the state convened in regular session, and this was the first meeting of the Assembly, or either branch thereof, after the appointments mentioned were made.

On January 15, 1920, Governor Morrow advised the senate that he had, subject to its consent and approval, appointed as members of the Workmen's Compensation Board R. C. P. Thomas for a term of four years from April 1, 1916, A. S. Bennett for a term of four years from April 1, 1918, and Clyde R. Levi for a term of four years from April 1, 1919, and thereupon the following resolution was adopted by the senate:

"Senate resolution rejecting the appointments of all members of the Workmen's Compensation Board of the Commonwealth of Kentucky made by Governor A. O. Stanley, during senate vacation, and consenting to and confirming the appointment of R. C. P. Thomas, A. S. Bennett and Clyde R. Levi, as members of the Workmen's Compensation Board of the Commonwealth of Kentucky, made on the 13th day of January, 1920, by Governor Edwin P. Morrow. The Governor having informed the senate that he has, subject to the consent and approval of the senate, appointed as members of the Workmen's Compensation Board of the Commonwealth of Kentucky, R. C. P. Thomas for a term of four years from April 1, 1916, A. S. Bennett for a term of four years from April 1, 1918, and Clyde R. Levi for a term of four years from April 1, 1919, and having asked that the senate take appropriate action upon said appointments; now, therefore, Be it resolved by the senate of the Commonwealth of Kentucky: That all vacation appointments on said

Workmen's Compensation Board of the Commonwealth of Kentucky made by Governor A. O. Stanley be, and the same are, by the senate hereby rejected, and the appointment of said R. C. P. Thomas, A. S. Bennett and Clyde R. Levi, as members of the Workmen's Compensation Board, this day submitted by the Governor Edwin P. Morrow to the senate for its approval be, and the same is, hereby consented to and confirmed by the senate.''

Following this, and on January 16th, 1920, Allington and Sewell, as plaintiffs, filed their separate petitions in equity in the Franklin circuit court against Bennett and Levi, as defendants. These petitions, which were identical except as to names and dates, set out in substance their appointments by Governor Stanley as members of the Workmen's Compensation Board at the time and for the terms heretofore stated; that each of them possessed the necessary qualifications for the office; that while they were acting as members of the board under and by virtue of their appointments, and on January 15th, 1920, Governor Morrow sent to the senate, for its approval or rejection, the names of Bennett and Levi to succeed these plaintiffs as members of the board, and their nominations were confirmed by the senate; that these appointees of Governor Morrow were asserting title to the offices to which they had been appointed, and claiming the right to take possession of the books and papers of the board and exercise the duties required of members of the board; and they asked that Bennett and Levi be enjoined from asserting claim to the offices, from taking possession of the rooms, books and papers belonging to the office and from attempting to exercise the duties of the office, or interfering in any way with Allington and Sewell in the discharge of the duties of the office.

To these petitions Bennett and Levi filed separate answers, setting up their right to the offices by virtue of the appointments of Governor Morrow, and the confirmation thereof by the senate. On these pleadings, the cases were heard together by the judge of the Franklin circuit court and the injunction asked refused. Thereupon, the plaintiffs in the manner authorized by the Code of Practice applied to me to grant the injunction prayed-for.

The Workmen's Compensation Act was enacted by the legislature in 1916, and it is provided in part in section 4920 of the act, which may be found in volume 3 of the Kentucky Statutes, that: ''A board is hereby created

to be known as the 'Workmen's Compensation Board,' which shall consist of three members appointed by the Governor. Each member of the board shall hold office for four years and until his successor shall have been appointed and qualified except that when the board is first created, one member shall be appointed for two years, one for three years and one for four years. Thereafter, upon the expiration of the term of any member, his successor shall be appointed for a full term of four years. Vacancies on the board shall be filled by appointment for the remainder of the unexpired term.''

It will be observed that the power to appoint members of the board for a full term, as well as to fill vacancies, is lodged by the act in the Governor; that an appointee for a full term shall hold his office for four years and until his successor shall have been appointed and qualified; and that vacancies on the board shall be filled by appointment for the remainder of the unexpired term.

It will further be noticed that no provision was made requiring the Governor to submit to the senate for its rejection or confirmation the names of the persons appointed by him for either a full term or to fill a vacancy, and if this act was the only applicable law on the subject of these appointments, it is very plain that the Governor would have no warrant or authority for sending the names of members of the board to the senate for its approval or disapproval, and equally plain that if he should do so the action of the senate, whatever it might be, would have no binding force on either the Governor or his appointees.

I say this because the Workmen's Compensation Act is purely a legislative creation, and in providing for the appointment of members of the board, the legislature had the undoubted power to make these appointments itself or give them to the Governor, or indeed any other person or body that it might designate; and also the power to provide that the appointing authority should submit his or its appointments to any person or body the legislature might designate for his or its approval or rejection.

This power is conferred on the legislature by section 93 of the Constitution, providing in part that:

"Inferior state officers not specifically provided for in this Constitution may be appointed or elected in such manner as may be prescribed by law for a term not exceeding four years, and until their successors are appointed or elected and qualified.''

A full discussion of the power of the legislature in this respect may be found in Sinking Fund Commissioners v. George, 104 Ky. 260, 84 Am. St. Rep. 453; State v. Boucher, 3 N. D. 389, 21 L. R. A. 539; Davis v. State, 7 Md. 1515, 61 A. D. 331; People v. Freeman, 80 Cal. 233, 13 Am. St. Rep. 122.

As illustrating the manner in which this power has been exercised by the legislature of this state reference may be made to the act creating the Board of Penitentiary Commissioners set forth in the George case, *supra*, in which the legislature itself appointed the board; to the act creating the office of Hotel Inspector (Ky. Stats. 2059a), in which provision is made for the appointment by the Governor of a hotel inspector, subject to the approval of the Attorney General; to the act creating the State Board of Health (2047 Ky. Stats.), in which the Governor, although given the appointment of the members of the board, is required to elect them from names submitted to him by medical associations; to the act creating a State Board of Election Commissioners, who were to be appointed by the Governor from a list of names furnished by the two political parties; and to the acts creating a Board of Pharmacy (section 2621 Ky. Stats,); and a Board of Dental Examiners (Ky. Stats., sec. 2636), which boards were to be appointed by the Governor from a list of names designated by the Kentucky Pharmaceutical Association and the Kentucky State Dental Association.

But when the power to appoint or reject or confirm is given by the legislature to a described person or body, to the exclusion of any other person or body, the authority so confided cannot, of course, be surrendered to or transferred to any other person or body by those to whom it is confided; and as the legislature vested in the Governor the power to appoint members of this board, if there were no other law on the subject, he could not transfer the duty and responsibility conferred to the senate or to any person or body for approval or rejection.

So that looking alone to the provisions of the act, it is obvious that neither Governor Morrow nor the senate could, without cause, remove during their term the appointees of Governor Stanley or appoint others to perform the duties of the office and it would follow that Allington and Sewell should have the relief prayed for.

There is, however, another statute of general application that must be considered in connection with and as a part of the sections of the Workmen's Compensation Act that make provision for the appointment and removal of members of the Board. This section, which of course applies only to appointive and not elective offices, is 3750 of the Kentucky Statutes, reading as follows:

"No person appointed to an office by the Governor, by and with the advice and consent of the senate, shall be removed therefrom by the Governor, during the term for which he was appointed, unless for failure to discharge, or neglect in the performance of the duties of his office. And any person removed for such cause shall be notified, in writing, of the cause of his removal; and the facts connected therewith shall be laid before the senate by the Governor at its next session. Unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy, or as an original appointment, shall hold office, subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments at its first session held thereafter."

This section is a part of the chapter in the Kentucky Statutes entitled "Offices and Officers," enacted by the legislature in 1893, although a number of the sections now found in the chapter had been the law for many years prior to 1893. This chapter contains a number of sections relating to offices and officers generally without reference to whether the office and officer was the creation of the Constitution or the creature of the legislature, and when there is nothing in the Constitution or in the act creating the office and officer in conflict with the provisions of this chapter, it applies to all offices and officers described in the chapter.

As illustrating the scope of this chapter, there are sections in it providing that no office shall be sold or let to farm by any person holding or expecting to hold the same; that if any officer shall be convicted of bribery, forgery, perjury or any felony, his office shall be vacated by such conviction; that certain named offices shall be deemed incompatible, the one with either of the others; that any officer who shall receive directly or indirectly any interest, profit or perquisite arising from the use or loan of public funds in his hands shall be guilty of a felony; that any person holding an office, who shall, while in the dis-

charge of the duties of the office, be in a state of intoxication, shall be deemed guilty of a misdemeanor; that no officer from whom a covenant is required shall enter upon the duties of the office until the same is given; that the failure of an officer to execute the bond and take the official oath required shall work a forfeiture of his office; that no fact officially stated by an officer shall be called in question except upon the allegation of fraud or mistake; and the provisions of these sections have been enforced many times against the officers to whom they were applicable.

It was manifestly the purpose of the legislature in adopting the sections in this chapter to make provision for omissions and deficiencies in special acts, of which there are great numbers, creating offices and officers, and that the legislature had the power, except in so far as it was restrained by the Constitution, to enact these general provisions relating to offices and officers, will not be controverted, nor will it be disputed that these general provisions, in so far as applicable and not in conflict with the provisions of the legislative acts creating offices and officers, are to be read in connection with and as a part of such acts.

In conformity with the general rule thus stated it is said in Sutherland on Statutory Construction, vol. 2, section 443 that:

"All consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes in *pari materia,* are treated prospectively and construed together as though they constituted one act. This is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day. They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all of their provisions harmonize they are made to operate together so far as possible consistently with the evident intent of the latest enactment. Statutes which are not inconsistent with one another, and which relate to the same subject-matter, are in *pari materia,* and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times."

In addition to this these sections have in many cases been applied to special acts relating to offices and officers by this court when the subject matter of the sections was not treated of in the special acts. Fields v. Chipley, 79 Ky. 260; Commonwealth v. Chinn, 110 Ky. 527; Johnson v. Commonwealth, 111 Ky. 630; Connelly v. American Bonding & Trust Company, 113 Ky. 903; Lowe v. Phelps, 14 Bush 642; Byers v. First State Bank, 159 Ky. 135.

With this understanding of its purpose and effect, I come now to consider whether section 3750 should be read into and considered as a part of the sections of the Workmen's Compensation Act relating to members of the board; and it will be at once seen that this is the principal question in the case, because if section 3750 has no application to members of the board, then neither Governor Morrow nor the senate, acting separately or in concert, had the power to remove either Allington or Sewell during the terms for which they were appointed except for cause. On the other hand, if this section is to be read into and as a part of the related sections of the Compensation Act, Bennett and Levi are entitled to the offices.

It will readily be seen—and indeed is not questioned —that there is no apparent conflict on the face of the statutes between sections 4920 of the Compensation Act and section 3750. Section 4920 merely provides that the board shall be "appointed by the Governor," while section 3750 simply stipulates that unless it is "otherwise provided," all persons appointed to an office by the Governor shall hold it subject to the advice and consent of the senate. This section does not in any manner interfere with the power of the Governor to appoint. It merely provides that when he does appoint, his appointment shall be subject to the approval of the senate. It only adds to or supplements the provisions of the Compensation Act by declaring that the appointments made by the Governor must be submitted by him to the senate for its approval or rejection.

It supplies omissions in the act as do many other sections in the chapter supply omissions in other acts. For example: Section 3740 disqualifies from holding the office any officer who sells or lets his office to farm, and it would hardly be contended that the provisions of this section should not be read into and as a part of every act creating an office and officer in which there was no provision in conflict with it.

Section 3755 provides that the failure of an officer to give the official bond and take the oath of office within the time specified shall vacate his office, and it would not be doubted that the provisions of this section should be read into and as a part of every act creating an office and an officer unless it conflicted with some provision of the act. Section 3747 provides that any officer who appropriates to his own use interest or profits for the use or loan of public funds in his hands shall be guilty of a felony and thereafter be disqualified to hold any office, and it will be, I think, conceded that the provisions of this section are to be read into and as a part of every act creating an office and an officer that does not contain provisions in conflict with the terms of the section.

These examples of the intent and applicability of the sections contained in the general chapter on office and officer sufficiently illustrate its design, meaning and effect; and in view of the many cases in which this court has applied the sections of this chapter to other acts, it is difficult to understand why the provisions of section 3750 should not apply to and be read as a part of the Compensation Act, as there is nothing in that act in conflict with the provisions of the section.

It is said, however, by counsel for Allington and Sewell that as the act creating the Compensation Board gave to the Governor the exclusive right of appointment, this was in effect declaring that his appointment should not be subject to the supervision of the senate. In support of this view, reference is made to the case of Ingard v. Barker, 27 Idaho 124. This case I have carefully read and find that it is not at all pertinent and therefore need not be further noticed. The proposition asserted by counsel involves, as I think, a strained and unnatural construction of the Workmen's Compensation Act, as well as section 3750.

Section 3750 in simple and unmistakable language declares that: "Unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy or as an original appointment, shall hold the office subject to the advice and consent of the senate."

Now, what do the words "unless otherwise provided" mean in connection with the point under consideration? These words are in common and general use, have no technical meaning and should be given that construction that will carry out their purpose according

to their commonly understood usage. The word "otherwise" is, of course, the controlling word in this group of words, and as defined by Webster, "otherwise" means "in a different manner; in another way; or in other ways; contrarily; another way or manner;" and it is according to these definitions that the word "otherwise" is commonly used and understood.

It is further plain that the words "unless otherwise provided" have reference to something that follows the appointment by the Governor, and unless the act creating the office makes some provision whereby the appointment shall be subject to the advice and consent of some other person or body, or provides that the appointment shall not be subject to the advice and consent of any other person or body, it cannot be said that the act has "otherwise" provided that the appointment shall not be made subject to the advice and consent of the senate.

Clearly the mere failure of the act to make any provision whatever concerning the approval or rejection of the appointment after it has been made is not either in spirit or in substance a provision that the appointment shall not be subject to the advice and consent of the senate. In order to defeat the meaning and purpose of this last sentence in section 3750, the act creating the office must in terms or in substance make some provision contrary to the meaning and effect of the sentence, and this the legislature could easily have done if it had wanted to by providing that the appointment should not be subject to the advice and consent of the senate, or that the appointment should be approved in some other manner or way.

It is further insisted that the words "Unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy or as an original appointment, shall hold office subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments at its first session held thereafter," were intended to apply only to officers who were appointed by the Governor by and with the advice and consent of the senate.

In other words, the argument is that when the act creating an office and officer provides that the officer shall be appointed by the Governor, by and with the advice and consent of the senate, but makes no provision for

filling vacancies by and with the advice and consent of the senate, the quoted words should be read into and as a part of the act, and accordingly vacancy appointments in such an act must be submitted to the senate as the original appointments are required to be. This argument, of course, assumes that original appointments to the compensation board are not subject to the advice and consent of the senate, and if this were so neither would vacancy appointments be subject to the advice and consent of the senate.

But having, as heretofore stated, reached the conclusion that original appointments under this act must be submitted to the senate for its advice and consent, it necessarily follows, if the last sentence in section 3750 is to be given any effect, that vacancy appointments must also be submitted to the senate.

This last sentence is well written and its meaning expressed in simple and easily undertood words. It refers as plainly as language can make it to "all persons appointed to an office by the Governor, whether to fill a vacancy or as an original appointment," and declares that all persons so appointed "shall hold office subject to the advice and consent of the senate, which body shall take appropriate action upon such appointment at its first session held thereafter." There is no limitation or restriction in this sentence. It is as broad as it could be phrased, and covers every vacancy and every original appointment, unless "otherwise provided" in the act, creating the office and officer.

Finally the doctrine of contemporaneous construction is relied on by counsel for Allington and Sewell, and in support of this contention it is pressed with much force that the practice of Governors of the state since 1893 has been not to send appointments to the senate for its advice and consent unless the act creating the office and officer so provided.

And in this connection attention is called to the fact that a number of acts creating offices and officers expressly provide that the appointment shall be made by the Governor subject to the advice and consent of the senate, while many other acts giving appointments of officers to the Governor do not make any provision for the submission of the appointments to the senate. Among these latter mentioned acts is the Workmen's Compensation Act.

I accept as correct the statements of counsel giving examples of acts that omitted the requirement that the Governor should submit his appointments to the senate, and it was not done. Probably this course of conduct was pursued for personal or political reasons; perhaps it was adopted upon the theory that as the act creating the office did not so provide it was not necessary, and it is possible that the attention of the Governor was not directed to section 3750 of the statutes, or he did not appreciate the application of the section.

It would not, however, be profitable to inquire into the reasons that influenced different Governors not to submit to the senate the names of their appointees when the act did not require that it should be done. It should be said, however, that in all cases in which the act did provide that the appointments should be made subject to the advice and consent of the senate, the names of appointees were sent to the senate.·

· The question now is shall this contemporaneous construction prevail? The doctrine of contemporaneous construction is a very old one and of very general adoption and approval by the courts. Indeed, it has come to be universally recognized that contemporaneous construction is a useful aid in the interpretation of statutes of doubtful meaning. But in obtaining the aid of this rule of construction, tre courts do not surrender to executive, ministerial or departmental officers the power invested in them to interpret for themselves the meaning of statutes; nor in yielding to the construction placed on statutes of ambiguous meaning by the officers charged with their administration or execution do they abdicate the final jurisdiction and authority that the constitutions and the law have placed in their hands.

The courts merely resort, in cases where statutes are of doubtful meaning, to the construction placed on them by the officers charged with their execution as an aid in arriving at the legislative intent, just as they are permitted to and often do look to the mischief the law was intended to remedy; the historical setting surrounding its enactment; the public policy of the state; the condition of its laws; the habits and manners of its people; and all other prior and contemporaneous facts and circumstances that throw intelligent light on the intention of the lawmaking body. Illustrative cases are: Harrison v. Commonwealth, 163 Ky. 162; Clark's Run Turnpike

Road v. Commonwealth, 96 Ky. 525; Louisville v. Louisville Water Company, 105 Ky. 754; Commonwealth v. Gregory, 121 Ky. 256; Eastern Kentucky Coal Lands Corporation v. Com., 127 Ky. 667; Prigg v. Pa., 16 Pet. 539, 10 Law Ed. 1060; Hohn v. United States, 107 U. S. 402, 27 Law Ed. 527; Provident Life Company v. Mercer County, 170 U. S. 593, 42 Law Ed. 1156; St. Paul M. & M. R. Co. v. Phelps, 137 U. S. 528, 34 Law Ed. 767; United States v. Tanner, 147 U. S. 661, 37 Law Ed. 321. See further Lewis Southerland Statutory Construction, vol. 2, sec. 471; Endlich on the Interpretation of Statutes, sec. 25b.

On the other hand, when the meaning of the statute is clear and its language free from ambiguity; when from its reading no mistake can be made as to its intention, no amount of contemporaneous construction will be allowed to give the statute a meaning or purpose inconsistent with the intention and meaning of the law as found in the statute itself, and this for the simple reason that in the interpretation of laws so plain as to leave no doubt about their meaning, there is no occasion to resort to extraneous circumstances to ascertain what it is.   Illustrative cases are: Commonwealth v. Railroad Companies, 95 Ky. 60; United States v. Alger, 152 U. S. 384, 38 Law Ed. 488; Fairbanks v. United States, 181 U. S. 283, 45 Law Ed. 862; Studebaker v. Perry, 184 U. S. 258, 46 Law Ed. 528; United States v. Graham, 110 U. S. 219, 28 Law Ed. 126.   See further Lewis' Statutory Construction, vol. 2, sec. 474; Endlich on the Interpretation of Statutes, sec. 361.

Coming now to apply these briefly stated principles controlling the doctrine of contemporaneous construction I find no room or place for the application of this rule in the construction of section 3750.  This section is short, well written and free from any words or sentences of doubtful meaning.

It contains three sentences, all relating to the appointment and removal of officers, but each dealing with a separate feature of this general subject.  The first sentence provides that no person appointed to an office by the Governor, with the advice and consent of the senate, shall be removed by the Governor during the term unless for failure to discharge or neglect in the performance of his duties; the second that any person who is removed shall be notified in writing of the cause of his removal

and the facts connected therewith laid before the senate; the third and last provides that unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy or as an original appointment, shall hold office subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments.

I venture the assertion that a lawyer, or even a layman, who was called on to give the meaning of this section without reference to any particular appointment or case, or any other section of the statute, would have no difficulty, upon one reading, in forming a clear and fixed opinion as to its meaning; and to hold that a court when considering its interpretation must be controlled by the manner in which it has been construed and applied by state officers, would mean nothing more nor less than a complete surrender of the construction of perfectly plain statutes to the state officers charged with the duty of administering them, although their construction might be entirely inconsistent with the unmistakable meaning of the statute.

It was never intended that this power, duty and responsibility reposed in the courts by the Constitution and exercised by them since the establishment of the state should be turned over by them to executive, ministerial or other officers, who, not being charged with the responsibility of courts, might be influenced in their construction by personal, political or other pressing circumstances.

It follows from what I have said that when the legislature has confided to the Governor appointments to an office, whether as an original appointment or to fill a vacancy, that the Governor, unless the statute creating the office otherwise provides, must submit the appointments to the senate at its first session after they are made for its advice and consent, and that no person so appointed by the Governor, whose appointment is not approved by or is rejected by the senate, is entitled to hold the office after another person appointed to fill the office by the Governor has been approved by the senate.

Accordingly the motion to grant the injunction refused by the judge of the Franklin circuit court must be overruled. In considering this motion I had the assistance of the whole court except Judge Hurt, and the members who heard the matter concur in what I have said and in the conclusion reached.