## McChesney v. Sampson, Governor et al.

(Opinion Ordered Published January 17, 1930.)

HENRY JACKSON, SANDERS E. CLAY and MORRIS & JONES for plaintiff.

J. W. CAMMACK, Attorney General, LESLIE W. MORRIS and EDWARD C. O'REAR for defendants.

OPINION OF THE COURT BY JUDGE WILLIS—Denying motion to dissolve temporary injunction.

The problem presented by the pending motion is to determine the powers of the Governor of Kentucky respecting removal or recall of an unconfirmed appoin-

tee to membership on the state text-book commission, when there has been no session of the Senate subsequent to the appointment.

The state text-book commission was created by statute to consist of twelve members, including the Governor and superintendent of public instruction ex officio. The other ten members were to be appointed by the Governor at the time and in the manner specified. "Five of the members so appointed shall serve for two years, and five for four years from and after their appointment, and until their successors are appointed and qualified, the terms of the respective members to be designated in their appointment." Chapter 77, Acts of 1926, p. 248, sec. 1; section 4421a-1, 1928 Supp., Ky. Stats. Governor Fields, who was in office when the act became effective, appointed ten members constituting, with the Governor and superintendent of public instruction, a complete commission. The Senate at its next session in 1928 failed to confirm the appointments so made, and a new commission was appointed by Governor Sampson in September, 1928. Litigation ensued raising an issue as to the rightful incumbents of the office in which it was held by this court, all members concurring, that section 3750, Kentucky Statutes, applied to persons appointed as members of the state text-book commission, and the failure of the Senate to act upon the appointments of Governor Fields terminated the rights of the respective appointees, and resulted in vacancies which Governor Sampson was authorized to fill. Bell v. Sampson (Ky.) 23 S. W. (2d) 380. Among the appointees of Governor Sampson was Frank V. McChesney, to whom a commission was issued on September 12th, 1928, reading:

"In the Name and by the Authority of
the Commonwealth of Kentucky.

"Flem D. Sampson, Governor of
Said Commonwealth

"To All to Whom These Presents Shall Come,
Greeting:

"Know Ye, That Frank V. McChesney, Fifth Appellate District, Danville, Ky. having been duly appointed a member of the State Text-book Commission for a term of two years from April, 1928, and until his successor is appointed and qualified, to succeed H. C. Burnett.

"I hereby invest him with full power and authority to execute and discharge the duties of the said office according to law. And to have and to hold the same, with all the rights and emoluments thereunto legally appertaining, for and during the term prescribed by law.

"In Testimony whereof, I have caused these letters to be made patent, and the seal of the Commonwealth to be hereunto affixed. Done at Frankfort, the 12th day of September in the year of our Lord one thousand nine hundred and 28 and in the one hundred and 37th year of the Commonwealth.

"FLEM D. SAMPSON.

"By the Governor:

"ELLA LEWIS,

"Secretary of State.

"ROBERT DIXON, JR.,

"Assistant Secretary of State.

"(Seal of the commonwealth of Kentucky)."

McChesney accepted the appointment, qualified, and exercised the functions of the office until the 5th of August, 1929, when an executive order was entered as follows:

"For sufficient and satisfactory reasons I have this day and do now remove Frank V. McChesney of Danville, Kentucky, from office as a member of the State Textbook Commission from the fifth appellate court district of Kentucky, and he is now removed from said office and his office is declared vacant and is now vacant."

Miss Nasbye Kephart was then appointed to fill the vacancy and accepted the appointment. This action was instituted by McChesney to compel his recognition as a member of the commission and to enjoin the commission from recognizing Miss Kephart and from excluding him from participation in the work of the commission. The circuit court granted the relief sought by McChesney, and a motion has been made before the undersigned Judge of the Court of Appeals to dissolve the temporary injunction granted.

Two contentions are sharply contrasted. It is insisted that an appointment to the office in question is not complete without the consent of the Senate, and until the title to the office is thus vested, the Governor is free to designate, revoke, and reappoint at will. On the other

hand, it is argued that the power to appoint vested by statute in the Governor is exhausted with its exercise, and that an appointee is not removable, holding the office subject alone to the action of the Senate. The act creating the commission conferred upon the Governor no power to remove members. Such power is not incidental to the power of appointment, except where the authority to appoint is conferred in general terms for an indefinite period, without other provision of law restricting the power of removal. Votteler et al v. Fields, Governor, manuscript opinion by Judge Dietzman, whole Court concurring, filed Jan. 17, 1930. 23 S. W. (2d) 391; Commissioners of Sinking Fund v. Byars, 167 Ky. 306, 180 S. W. 380; Simons v. Scott, 188 Ky. 535, 222 S. W. 1075. It follows that no power of removal exists in the present instance unless it is conferred by some other statute. In so far as we are advised, section 3750, Ky. Stats., is the only provision affecting the matter. It reads:

"No person appointed to an office by the governor, by and with the advice and consent of the senate, shall be removed therefrom by the governor, during the term for which he was appointed, unless for failure to discharge, or neglect in the performance of the duties of his office. And any person removed for such cause shall be notified, in writing, of the cause of his removal; and the facts connected therewith shall be laid before the senate by the governor at its next session. Unless otherwise provided, all persons appointed to an office by the governor, whether to fill a vacancy, or as an original appointment, shall hold office, subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments at its first session held thereafter."

This section applies to members of the state textbook commission, as was held in the case of Bell v. Sampson, where the status of McChesney, as a member of the board, was adjudicated and his right to the office upheld as against the former members appointed by Governor Fields. It is apparent that the power of removal conferred upon the Governor by section 3750, supra, is confined to persons appointed by the Governor "by and with the advice and consent of the Senate." It does not apply to appointees who have not been confirmed by action of the Senate. Votteler v. Fields, supra. As to

such persons, "whether to fill a vacancy, or as an original appointment," the statute expressly says they "shall hold office, subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments at its first session held thereafter." That is necessarily exclusive and means that such appointees are subject to no other power or authority than the Senate and hold office until rejected by the Senate. Barrett v. Duff, 114 Kan. 220, 217 P. 918. The statute invests the Governor with power to remove for cause appointees confirmed by the Senate, but does not confer upon the chief executive like authority over unconfirmed appointees to office. It is suggested that unconfirmed appointees thus have a position more secure than those who have been confirmed by the Senate, in that the former may not, while the latter may, be removed for cause by the Governor. It may be that the Legislature did so on the assumption that the commonwealth in such cases is not without remedy. If an officer proves derelict, section 68 of the Constitution authorizes impeachment, but impeachment is not necessary when the appointee has not been confirmed. The Legislature may be called in special session, and an appointment summarily rejected. The General Assembly may have thought the remedy afforded by rejection of an appointed member was sufficient, while a more speedy and less cumbersome remedy than impeachment was believed to be necessary after confirmation. It may be seen that the appointee has no such permanent status as would enable him to flout the law or defy the statutes governing his office. But however that may be, we are unable to deduce any other meaning from the language of section 3750, and its plain purport may not be changed by a consideration of results. Sewell v. Bennett, 187 Ky. 626, 220 S. W. 517. The power of removal must be derived from the provisions of the statute, and may not be deduced from the consequences flowing from its nonexistence.

We are thus brought to the final contention forcibly pressed that the appointments by the chief executive are mere nominations to be confirmed by the Senate, vesting no title to the office until both the Governor and the Senate concur, and that the Governor may substitute new nominations at will until the Senate has finally acted. It is said that the selection is inchoate, incomplete, and tentative until finally acted upon by the Senate, during which time the nominee holds subject to the

will of the Governor. In cases where the Senate has no jurisdiction until a nomination has been submitted to it by the executive, it is plain that only the names finally selected and submitted may be considered. In such cases no nomination is really made until it is submitted to the Senate. But such is not the provision of law or practice in this state. Here an appointment by the Governor is not required to be communicated to the Senate. The secretary of state must keep a register of the official acts of the Governor. Const. sec. 91. The Senate must take notice of the contents of the register, and, at its next session, under the mandatory provision of section 3750 of the Statutes, act upon the appointments. 23 C. J. 58; Bell v. Sampson, supra. Furthermore, in cases where the nomination must be confirmed before the officer can take the office or exercise any of its functions, the power of removal is not involved and nominations may be changed at the will of the executive until title to the office is vested. But under our system the appointee of the Governor takes the office, enters upon the performance of its duties, and is charged with responsibility. He holds then subject alone to the action of the Senate. His status is not that of a nominee awaiting confirmation, but that of an officer invested with the powers, privileges, and responsibilities of the position until the Senate acts. A recall of his designation would operate as a removal from office. It is argued that appointment to the office consists of two separate acts, one by the Governor and one by the Senate, and until both have acted there is no appointment such as to bring the incumbent within the protection of the law. Even so, the two powers do not act concurrently, but consecutively, and action once taken and completed by the executive is not subject to reconsideration or recall. It is the general rule that an appointment to office is intrinsically executive. State v. Barbour, 53 Conn. 76, 22 A. 686, 55 Am. Rep. 65; State v. Starr, 78 Conn. 636, 63 A. 512; Marbury v. Madison, 1 Cranch. 137, 2 L. Ed. 60; Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455. In all jurisdictions where appointment to office is regarded as an executive function, as here, an appointment to office once made is incapable of revocation or cancellation by the appointing executive in the absence of a statutory or constitutional power of removal. Barrett v. Duff, 114 Kan. 220, 217 P. 918; People v. Mizner, 7 Cal. 519; State v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006; Draper v. State, 175

Ala. 547, 57 So. 772, Ann. Cas. 1914D, page 305, Annotation.

What, then, constitutes an appointment in so far as the chief executive has to do with it? Appointment to an office by one possessing the appointing power is the designation of another person to discharge the duties of the office. 1 Bouv. Law Dict., p. 215. It is completed when the appointing authority has performed the acts incumbent upon him to accomplish the purpose. Justices, etc., v. Clark, 1 T. B. Mon. 82; Hoke v. Field, 10 Bush, 144, 19 Am. Rep. 58. The fact that the title to the office, and the tenure of the officer, are yet subject to the action of the Senate, does not render incomplete the act of the chief executive in making the appointment. The appointment alone confers upon the appointee for the time being the right to take and hold the office, and constitutes the last act respecting the matter to be performed by the executive power.

The subject received profound consideration by the Supreme Court of the United States in Marbury v. Madison, 1 Cranch. 137, 2 L. Ed. 60, in which Chief Justice Marshall delivered the opinion of the court. That case dealt with appointments under the Constitution of the United States, but the reasoning applicable to executive action is illuminating. In the course of the opinion it is said:

"The appointment being the sole act of the President, must be completely evidenced, when it is shown that he has done everything to be performed by him, . . . All that the executive can do to invest the person with his office, is done; and unless the appointment be then made, the executive cannot make one without the cooperation of others.

"The last act to be done by the President, is the signature of the commission. He has then acted on the advice and consent of the senate to his own nomination. The time for deliberation has then passed. He has decided. His judgment, on the advice and consent of the senate concurring with his nomination, has been made, and the officer is appointed. This appointment is evidenced by an open, unequivocal act; and being the last act required from the person making it, necessarily excludes the idea of its being, so far as respects the appointment, an inchoate and incomplete transaction. Some point of time must be taken when the power of the executive

over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed.''

Speed v. Detroit, 97 Mich. 198, 56 N. W. 570; Whitney v. Van Buskirk, 40 N. J. Law, 467; Draper v. State, 175 Ala. 547, 57 So. 772, Ann. Cas. 1914D, page 301; Barrett v. Duff, 114 Kan. 220, 217 P. 918.

Such power as flows from the act of the Governor in making the appointment is invested by the statute in the appointee, and may not thereafter be recalled or bestowed upon another unless the consent of the Senate is withheld. No valid appointment can be made to an office in possession of an incumbent whose tenure has not terminated. State v. Peelle, 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228.

As the great Chief Justice said in the Marbury case, after searching anxiously for the principles upon which an opposite opinion may be supported, none have been found which appear of sufficient force to maintain a different doctrine; and we are constrained to the conclusion that no authority is vested in the chief executive of this state, under the circumstances presented, to remove an appointee from office. The result reached is consistent with the decision in the case of Bell v. Sampson, supra. There the Senate, at its first session after the appointments were made, had not given its consent. The offices thereupon became vacant and subject to be filled again until the next session of the Senate. Governor Sampson did not remove the appointees of Governor Fields. The nonaction of the Senate on the appointments terminated the tenure of the appointees under the operation of section 3750, Ky. Stats., and the Governor was then authorized to appoint their successors.

It follows that the motion to dissolve the temporary injunction must be denied.

Chief Justice McCandless and Judges Thomas, Dietzman and Clay have considered the case with me and concur in the conclusions reached.

Given under my hand this 20th day of August, 1929.

S. S. Willis,
Judge of the Court of Appeals of Kentucky.