

**SUPREME COURT OF DELAWARE**

March 7, 2025

The Honorable Matthew Meyer
Governor of the State of Delaware
Carvel State Building, Twelfth Floor
820 N. French Street
Wilmington, DE  19801

The Honorable David P. Sokola
President Pro Tempore
Delaware State Senate
Legislative Hall
Dover, DE  19901

The Honorable Melissa Minor-Brown
Speaker
Delaware House of Representatives
Legislative Hall
Dover, DE  19901

*In re:  Requests for an Opinion of the Justices, Nos. 35, 2025 and 38, 2025*

Dear Governor Meyer, President Pro Tempore Sokola, and Speaker of the House Minor-Brown:

The Governor has requested the opinion of the Justices of the Delaware Supreme Court concerning the proper construction of Article III, Sections 9 and 12 of the Delaware Constitution of 1897.  Immediately after the Governor made his

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

request—in fact on the same day—the 153rd General Assembly passed Senate Concurrent Resolution No. 16, requesting the opinion of the Justices as to issues coincident with those raised by the Governor's request.[1]

Both requests followed the previous Governor's nomination of five directors to the Diamond State Port Corporation's ("DSPC's") board of directors and the current Governor's notice to the Senate that he was withdrawing the nominations and requesting the Senate to take no further action on them. The Senate responded that the previous Governor's nominees remained "viable" and refused to recognize their withdrawal.[2]

This chain of events prompted the Governor to submit the following questions to the Justices of this Court:

(1)    Under Article III, Sections 9 and 12 of the Delaware Constitution, does the Governor "have the discretion to withdraw the nominations prior to Senate confirmation?"[3]

(2)    "If the answer to the preceding question is in the negative, [and] if the Senate votes to confirm the nominations, [does the Governor]

---

[1] 10 *Del. C.* § 141(a) provides that "[t]he Justices of the Supreme Court, whenever the Governor of this State or a majority of the members elected to each House may by resolution require it for public information, or to enable them to discharge their duties, may give them their opinions in writing touching the proper construction of any provision in the Constitution of this State . . . ."

[2] J.A. to Opening Brs. at A75.

[3] *Id.* at A92.

have the discretion to withhold issuing commissions to the subject offices?"[4]

Under Senate Concurrent Resolution No. 16, the General Assembly submitted the following questions to the Justices of this Court:

(1) "Did the Delaware Constitution, including Article III, Section 9 thereof, empower Governor Bethany Hall-Long to submit nominations to the State Senate on a date between January 7, 2025, and January 21, 2025?"[5]

(2) "If the answer to Question 1 is affirmative, does the Delaware Constitution, including Article III, Section 9 thereof, and separation of powers considerations imbued therein, permit Governor Matthew Meyer to withdraw the Nominations lawfully before the Senate for consideration?"[6]

By order dated February 6, 2025, we consolidated these requests and appointed counsel to brief the Governor's and the General Assembly's respective positions.[7]

---

[4] *Id.*

[5] *Id.* at A95.

[6] *Id.*

[7] Under 10 *Del. C.* § 141(b), upon receipt of a request under §141(a), "[t]he Justices . . . may appoint 1 or more members of the Delaware Bar . . . for the purpose of briefing or arguing the legal issues submitted by the Governor or General Assembly." The Court appointed the firm of Young Conway Stargatt & Taylor, LLP, to brief Governor Meyer's position in response to all questions and Prickett, Jones & Elliott, P.A., to brief the General Assembly's position in response to all questions. Both firms graciously accepted these appointments and discharged their appointed tasks with skill and professionalism in the finest tradition of the Delaware Bar. For that, the Court is grateful.

3

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

Because the questions put to us overlapped and because we consider it important to address other considerations relevant to requests for advisory opinions under 10 *Del. C.* § 141(a), we reformulated the questions.[8] We begin with the reformulated questions and our summary answers:

(1) Given Supreme Court precedent, should the Court respond to the questions from the Governor and the General Assembly through 10 *Del. C.* § 141?[9]

ANSWER: Yes. The questions raise an issue of first impression bearing on a present constitutional duty awaiting performance by the Governor and the Senate. Because it is undisputed that none of the individuals whose names were submitted to the Senate by Governor Hall-Long has assumed office, a writ of *quo warranto*[10] in the Superior Court would, at present, be procedurally improper. Accordingly, it is in the public interest that we answer Question 3. For the reasons stated below, we need not answer Question 2. And because our answer to Question 3 is in the affirmative, we need not answer Question 4.

---

[8] *See* Order, *In re: Requests for an Advisory Opinion of the Justices*, Nos. 35, 2025C & 38, 2025C (Del. Feb. 6, 2025) (Dkt. 3).

[9] *See, e.g., Opinion of the Justices*, 424 A.2d 663, 664 (Del. 1980) (declining to advise on "the issue of the right to hold public office" because regular legal proceedings were available); *Opinion of the Justices*, 200 A.2d 570, 572 (Del. 1964) (declining to answer a hypothetical question that had "no bearing upon a present constitutional duty requiring" action).

[10] "The writ of *quo warranto* 'is a remedy that is essentially adversarial in nature that seeks to remove the challenged officer from a position.'" *Capriglione v. State ex rel. Jennings*, 279 A.3d 803, 805 n.13 (Del. 2021) (quoting 65 Am. Jur. 2d *Quo Warranto* § 2 (2021)).

4

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

Assuming the answer to Question 1 is affirmative:

(2)    Did the Delaware Constitution, including Article III, Section 9, empower Governor Bethany Hall-Long to submit Diamond State Port Corporation nominations to the State Senate between January 7, 2025 and January 21, 2025?

ANSWER:    Since submitting his questions, the Governor has stated through appointed counsel that he does not dispute that, between January 7 and 21, 2025, the Delaware Constitution empowered Governor Bethany Hall-Long to submit the names of potential appointees for the Diamond State Port Corporation board of directors to the State Senate for its consent.  Nor does the General Assembly contest Governor Hall-Long's power to submit names to the Senate for confirmation, though it recasts her nominations as "appointments."  Regardless of the nomenclature used to describe Governor Hall-Long's submissions, there is no longer an actual controversy surrounding her power to make them.  We therefore respectfully decline to give our opinions as to Question 2.

(3)    Assuming the answer to Question 2 is affirmative, did the Delaware Constitution, including Article III, Section 9, and separation of powers considerations, permit Governor Meyer to withdraw those nominations before Senate confirmation?

ANSWER: Yes.  Article III, Section 9 of the Delaware Constitution, while granting the Governor the appointment power subject to the Senate's consent, does not specify how the Governor starts the appointment process.  Here, Governor Hall-

5

Long initiated the appointments by delivering nomination letters to the Senate. Initiating the appointment process by submitting nominations to the Senate is not prohibited by, and is in fact consistent with, Article III, Section 9's text. And as explained more fully below, the Governor may withdraw a nomination before a majority of the Senate has consented to it.

(4)　Assuming the answer to Question 3 is negative and the Senate votes to confirm the nominations, does Governor Meyer have the discretion to withhold commissions for confirmed nominees to the Diamond State Port Corporation?

ANSWER: Because we answer Question 3 in the affirmative, we need not answer Question 4.

## I

The events leading to the Governor's and the General Assembly's questions are not complicated. On January 7, 2025, Governor John C. Carney, Jr., resigned his office to become the Mayor of the City of Wilmington. Then-Lieutenant Governor Bethany Hall-Long became Governor by operation of law. By five separate letters dated January 16, 2025, Governor Hall-Long "nominate[d] for the consideration of the Senate to confirm appointment" five nominees each "to be appointed a Director of the Board of Directors of the Diamond State Port Corporation . . . ."[11]

---

[11] J.A. to Opening Brs. at A55–59.

6

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

On January 21, 2025, on the same day he was sworn in as the 76th Governor of Delaware, Matthew Meyer delivered a letter to the State Senate withdrawing Governor Hall-Long's five nominations to the DSPC Board. Later that day, the President Pro Tempore of the Senate responded by letter to Governor Meyer, informing him that the Senate believed that Governor Hall-Long's nominees remained "viable nominees before the Senate."[12] In short, the Senate did not accept Governor Meyer's withdrawal of the nominations and proceeded with Executive Committee consideration of four of the five nominees,[13] voting them "out of committee" on January 30, 2025.[14] The Governor's request for the opinion of the Justices and Senate Concurrent Resolution No. 16 followed.

---

[12] *Id*. at A75.

[13] One of Governor Hall-Long's nominees withdrew his own nomination, which the Senate accepted. *See* Opening Br. in Support of the Position of Governor Meyer at 8.

[14] J.A. to Opening Brs. at A94. *See also id.* at A81.

7

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

II

Our opinions, expressed in summary fashion above, are based on the following considerations:

**Question 1: Given Supreme Court precedent, should the Court respond to the questions from the Governor and the General Assembly through 10 *Del. C.* § 141?[15]**

Both Governor Meyer and the General Assembly, while recognizing that Delaware law permits, but does not require, the Justices to give their opinion upon request under 10 *Del. C.* § 141(a), urge us to answer the questions in the interest of resolving an active controversy over their respective roles in the appointment process. We in turn recognize that any opinions we might offer are "non-adjudicative expressions of personal points of view,"[16] which are not binding in litigation.[17] Having considered these limitations, we are satisfied that answering Question 3 as reformulated above will contribute to the resolution of the controversy and therefore serve the public's interest in the orderly administration of our State government.

---

[15] *See* cases cited *supra* note 9.
[16] *Opinion of the Justices*, 413 A.2d 1245, 1248 (Del. 1980).
[17] *In re Request for an Opinion of the Justices*, 155 A.3d 371, 372 (Del. 2017).

8

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

**Question 3: Assuming the answer to Question 2 is affirmative, did the Delaware Constitution, including Article III, Section 9, and separation of powers considerations, permit Governor Meyer to withdraw those nominations before Senate confirmation?**

Governor Meyer claims that his right to withdraw nominations before the Senate provides consent is an implicit part of his appointment power under the Delaware Constitution. By contrast, the General Assembly argues that the Governor cannot withdraw names that have already been submitted to the Senate for consideration because those nominations are "appointments" over which jurisdiction is "vest[ed] exclusively in the Senate."[18] For the reasons stated below, we conclude that Governor Hall-Long's submissions are nominations and that Governor Meyer has the power to withdraw nominations before the Senate confirms them.

We begin our analysis with the relevant constitutional text. Article III, Section 9 ("Section 9") of the Delaware Constitution unequivocally grants the Governor "the power to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he or she is or may be authorized by this Constitution or by law to appoint."[19] Section 9 is silent, however, as to how the appointment process starts. Even so, the plain language of Section 9 signals that an appointment cannot occur *until* the Senate has given its consent. In the case of the DSPC board

---

[18] Opening Br. in Support of the Position of the General Assembly at 3.
[19] Del. Const. art. III, § 9.

9

of directors, Governor Hall-Long started the process by sending letters to the Senate "nominating for the consideration of the Senate" the names of five Delaware citizens "to appoint to the Board of Directors of the Diamond State Port Corporation . . . ."[20]

Our textual analysis confirms that Governor Hall-Long's letters were not fully consummated appointments of the named nominees but were merely the first step in the appointment process. Section 9 provides that the appointment is made "by and with" the Senate's consent, and it is undisputed that the Governor's nomination letters were not executed and delivered "by and with" such consent. The letters are, as they plainly state, nominations and *not* appointments.

Admittedly, Section 9 does not explicitly state that the Governor must first "nominate" an individual to the Senate. But the suggestion that the absence of any language in Section 9 calling for the Governor to start the appointment process by a nomination prohibits the Governor from doing so is an unsupported leap in constitutional logic; it runs head-on into the venerable constitutional principle that, when a power is expressly granted to a branch of government, the grant carries with

---

[20] J.A. to Opening Brs. at A55–59.

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

it the power to employ means appropriate to accomplishing the constitutional task for which the power is expressly granted.[21]

The Constitutional Debates, moreover, show that the delegates intended the appointment process to begin with a nomination from the Governor. For instance, one delegate explained "that certain officers in this State, *before* they shall be qualified to exercise the duties of the office for which they have been *nominated by the Governor*, shall be confirmed by the Senate."[22] A different delegate stated that it was the Governor's "duty . . . to *nominate* and the Senate to confirm the appointment."[23] Throughout the debates, the delegates referred to a "nomination"

---

[21] *See McCulloch v. Maryland*, 17 U.S. 316, 421 (1819) ("Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."). It might be argued that *McCulloch* was decided under Article I, Section 8, Clause 18—the "Necessary and Proper Clause"—of the United States Constitution and that the absence of such a clause in our state constitution renders *McCulloch*'s reasoning inapt. But in our opinion the principle articulated by Chief Justice Marshall—at least as it relates to the question we must answer—does not hinge exclusively on the Necessary and Proper Clause. In Chief Justice Marshall's words, the principle that when "the government . . . has a right to do an act, and has imposed on it [] the duty of performing that act, [it] must, *according to the dictates of reason*, be allowed to select the means." *Id*. at 409–10 (emphasis added). Likewise here—the dictates of reason support our conclusion that the Governor is authorized to initiate the appointment process by nomination.

[22] *See* 3 Charles G. Guyer & Edmond C. Hardesty, Debates and Proceedings of the Constitutional Convention of the State of Delaware 2070 (1958) [hereinafter "*Debates*"] (emphasis added).

[23] *Id.* at 1902 (emphasis added).

11

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

as the first step in the appointment process.[24]  And this Court has interpreted the Delaware appointment process to begin with a nomination by the Governor.[25]

Just as the text of Section 9 does not foreclose the Governor's initiation of the appointment process by nomination, it does not prohibit the Governor from withdrawing a nomination before Senate confirmation.  We are unanimously of the opinion that nominations, such as those from which the current controversy has arisen, that the Senate has not consented to, are subject to withdrawal by the Governor.  Indeed, it was undisputed that, if we were to conclude that Governor Hall-Long's letters on January 16 were nominations rather than appointments, then the sitting Governor would have a "withdrawal right because there is not yet an

---

[24] *See, e.g.*, *id.* at 2081 ("If any check is introduced upon the appointing power of the Governor, it certainly is desirable that in that Senate which is to pass upon the *Governor's nominations . . . .*) (emphasis added); *id.* at 1922 (noting that the Governor would "have to *nominate*" the Secretary of State) (emphasis added); *id.* at 2054 (noting that some senators might "simply say to the Governor, 'We want that office, and if you don't give it to us we will not confirm any man that you *nominate*.'") (emphasis added); 2 *id.* at 1303 (debating what percentage of the Senate should be required to consent to officers "*nominated* by the Governor of this State") (emphasis added); 4 *id.* at 2759 (discussing what percentage of the Senate should be required to confirm the Governor's "*nomination*" of judges) (emphasis added).

[25] *See, e.g*, *State, ex rel. Oberly v. Troise*, 526 A.2d 898, 899 (Del. 1987) ("This case presents the question whether the Senate's prolonged failure to act on gubernatorial *nominations* is to be deemed constructive consent thereto, thereby constitutionally authorizing the Governor to issue valid full-term commissions to his *nominees*.") (emphasis added); *State, ex rel. Gebelein v. Killen*, 454 A.2d 737, 739 (Del. 1982).

12

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

appointment."[26]  To conclude otherwise would significantly impair the Governor's ability to exercise the express appointment power.

Our interpretation of Section 9 is consistent with the United States Supreme Court's interpretation of the United States Constitution's Appointments Clause. When the Delaware Constitution was revised in 1897, it was well known that the appointment process under the United States Constitution entailed a three-step process: (1) the President nominates a candidate, (2) the Senate confirms the nominee, and (3) the President appoints the nominee.[27]  Nearly a century before the Delaware Constitutional Convention of 1897, the United States Supreme Court held in *Marbury v. Madison* that the President continued to have discretion over appointments even after those appointments were confirmed by the Senate.[28] According to the Court, the President retained discretion over the appointment process until the "last act" required for appointment was performed, which occurred when the President signed a commission and officially appointed the officer.[29]  It follows that, because the President of the United States has broad discretion over

---

[26] Video of Oral Argument, *Delaware Supreme Court*, at 27:43–28:30 (Feb. 26, 2025), https://vimeo.com/1060553268.
[27] *See Dysart v. United States*, 369 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *Marbury v. Madison*, 5 U.S. 137, 155–56 (1803)).
[28] 5 U.S. 137 (1803).
[29] *Id.* at 157–58.

13

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

appointments even after Senate confirmation, the President has the discretion to withdraw a nomination at any time until the last act in the appointment process. Such withdrawals are a common practice in the United States government.[30]

The General Assembly insists that the drafters of the Delaware Constitution intentionally deviated from the language in the Appointments Clause. That argument, however, finds no support in the Debates. In fact, one of the Delegates commented that the revision requiring the Governor's Secretary of State to be appointed by and with the consent of the Senate, would bring the Delaware appointment process "in [to] conformity with the provision of the Constitution of the United States . . . ."[31] Despite a slight variation between Section 9 and the Appointments Clause, we discern no substantive difference in how those provisions operate.

Our opinion is supported by the weight of authority from the courts of our sister states. The California Supreme Court, for example, determined that the

---

[30] The President of the United States has withdrawn four nominations in the present Congress. *Nominations Withdrawn*, United States Senate (119th Congress) (Last accessed Mar. 6, 2025), https://www.senate.gov/legislative/nom_wdr.htmdrawn. During the previous Congress, the President of the United States withdrew at least 15 nominations. *See Nominations Withdrawn*, United States Senate (118th Congress) (Last accessed Mar. 6, 2025), https://web.archive.org/web/20241107195646/https://www.senate.gov/legislative/nom_wdr.htm.

[31] *See* 4 *Debates* at 2724. The constitutional provision concerning the Governor's power to appoint a Secretary of State, Article III, Section 10, employs the identical "appoint, by and with consent" language as Article III, Section 9. Del. Const. art. III, § 10.

governor could withdraw a judicial nomination before confirmation because, until confirmation, the appointment process is not complete and does not confer the interim right to assume office.[32]  California's highest court noted that "the general rule in other states is that 'where the nomination must be confirmed before the officer can take the office or exercise any of its functions, the power of removal is not involved and nominations may be changed at the will of the executive until title to the office is vested.'"[33]

Likewise, the South Dakota Supreme Court found that the governor could withdraw a nomination before senate confirmation.[34]  There, the defendant argued that the governor did not have the power to withdraw his nomination because the action was deemed an "appointment" rather than a "nomination."[35]  The South

---

[32] *In re Governorship*, 603 P.2d 1357, 1365 (Cal. 1979).

[33] *Id.* (quoting *McChesney v. Sampson*, 23 S.W.2d 584, 586–87 (Ky. 1930)).  *See also McBride v. Osborn*, 127 P.2d 134, 137 (Ariz. 1942) (finding that the governor could, "for any reason he thought proper[,] change his mind and withdraw [the nominee's] name from the consideration of the senate any time before that body completed the appointment and made it final and effective by approving it."); *State ex rel. Todd v. Essling*, 128 N.W.2d 307, 312 (Minn. 1964) (noting that "in cases where the appointment process is initiated by a nomination, with no power vesting in the appointee to exercise the functions of the office until confirmation, the rule laid down in the Marbury case has no application until the senate confirms and the appointing authority issues a commission to the officer."); *In re Advisory Opinion to the Governor*, 247 So.2d 428, 433 (Fla. 1971) (finding that "[u]pon [the Governor] recalling any of the appointments the confirmation jurisdiction of the Senate ceases and that body is under a lawful obligation to return them to [the Governor].").

[34] *Burke v. Schmidt*, 191 N.W.2d 281 (S.D. 1971).

[35] *Id.* at 284.

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

Dakota Supreme Court summarily rejected this argument, finding that it "do[es] not believe the nomenclature used ought to be that test, but rather whether the action of the executive is final and complete and places the appointee in office without further action."[36]

The General Assembly has called to our attention two cases from other jurisdictions that have concluded that the Governor was not permitted to withdraw nominations—*Barrett v. Duff*[37] and *McChesney v. Sampson*.[38] These cases, however, are readily distinguished. In both cases, the Governors' nominations were more akin to appointments because the nominees had already begun acting with the authority of their respective offices before senate confirmation, as permitted under Kansas and Kentucky law, respectively.[39] The Kentucky Court of Appeals[40] even noted that in states, like Delaware, "where the nomination must be confirmed before the officer can take the office or exercise any of its functions, the power of removal

---

[36] *Id.*

[37] 217 P. 918 (Kan. 1923).

[38] 23 S.W.2d 584 (Ky. 1930).

[39] *See Barrett*, 217 P.2d at 919 (noting that the individuals in question had already "duly entered upon the duties" of their respective offices). *McChesney*, 23 S.W.2d at 587 ("But under our system the appointee of the Governor takes the office, enters upon the performance of its duties, and is charged with responsibility. He holds then subject alone to the action of the Senate. His status is not that of a nominee awaiting confirmation, but that of an officer invested with the powers, privileges, and responsibilities of the position until the Senate acts.").

[40] Before 1976, the Kentucky Court of Appeals was the highest court in the State of Kentucky.

16

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

is not involved and nominations may be changed at the will of the executive until title to the office is vested," but that "under [its] system the appointee of the Governor takes the office, enters upon the performance of its duties, and is charged with responsibility."[41]

Nor do we believe that separation-of-powers considerations dictate a different conclusion. To the contrary, we understand the drafters of the Constitution of 1897 to have placed the appointment power in the executive branch; situating the power in Article III—the article establishing our State's executive branch—is evidence of that. And Section 1 of Article III vests "[t]he supreme executive powers of the State" in the Governor. Simply put, under our Constitution, the appointment of officers identified in Section 9 is an executive function. The Senate, to be sure, provides a check through its consent authority on the Governor's faithful and diligent exercise of that function. But that check does not transfer the appointment power to the Senate upon the Governor's submission of a nomination as a precursor to appointment.[42] Concluding otherwise, in our opinion, would frustrate the drafters'

---

[41] *McChesney*, 23 S.W.2d at 587.

[42] The United States Supreme Court has applied this principle when interpreting the United States Constitution. *See Myers v. United States*, 272 U.S. 52, 118 (1926) ("The requirement . . . that the Senate should advise and consent to the presidential appointments, was to be strictly construed. The words . . . , following the general grant of executive power . . . [,] were limitations upon the general grant of the executive power, and as such, being limitations, should not be enlarged beyond the words used.").

17

The Honorable Matthew Meyer
The Honorable David P. Sokola
The Honorable Melissa Minor-Brown
March 7, 2025

allocation of the executive branch's and the legislative branch's respective roles in the appointment process.

In sum, we are persuaded that the weight of authority from our sister states and the federal Appointments Clause and separation-of-powers considerations support our text-driven opinion: The Delaware Constitution, including Article III, Section 9, permits Governor Meyer to withdraw the previous Governor's nominations to the DSPC Board before Senate confirmation.

*/s/ Collins J. Seitz, Jr.*
Chief Justice Collins J. Seitz, Jr.

*/s/ Karen L. Valihura*
Justice Karen L. Valihura

*/s/ Gary F. Traynor*
Justice Gary F. Traynor

*/s/ Abigail M. LeGrow*
Justice Abigail M. LeGrow

*/s/ N. Christopher Griffiths*
Justice N. Christopher Griffiths

18