## Gilbert, Supt., Etc. v. Greene, Auditor, Etc.

(Decided November 21, 1919.)

### Appeal from Franklin Circuit Court.

1. Taxation—Annual Tax for Estimated Expenses of the Government of the State—School Fund.—The Constitution of the State of Kentucky provides that the General Assembly shall provide by law an annual tax, which with other resources shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year; these expenses include the maintenance of the common schools.

2. Statutes—Construction—Meaning of Language.—Where the intention of the lawmaking body is so apparent on the face of a stat-

ute that there can be no question as to its meaning there is no room for construction. When language is clear it is an elementary rule of construction that words and phrases are used in their technical meaning if they have acquired one and in their popular meaning if they have not.

3.  Statutes—Construction—Meaning of Language.—Phrases and sentences are to be construed according to the rules of grammar and words of common use are to be understood in their natural, plain, ordinary and genuine signification as applied to the subject matter of the enactment.

4.  Statutes—Inheritance Taxes—Meaning of Language.—The expression "general use of the Commonwealth" found in the inheritance tax law, Ky. Stats., sec. 4221a, means funds for the use of the entire Commonwealth, and has a different meaning from the expression "ordinary expenses of the government" found in sec. 4019, Ky. Stats.

5.  Statutes—Construction—Meaning of Language.—The expression "general use of the Commonwealth" means a use not limited or restricted to a precise import or application. It pertains to and applies to the entire body politic; it is universal within the limits of the reference; i. e., it applies to all and not merely to some specific or particular part of the whole.

6.  Statutes—Construction—Meaning of Language.—The expression "ordinary expenses of the government" as found in various statutes pertains to those common, usual or ordinary expenses of the state not otherwise specified. It represents one of the sub-divisions into which the general funds are appropriated. "Ordinary expenses" are the expenditures which are necessary to carry into effect the ordinary powers of the Commonwealth, and this term as found in our statutes is used in contradistinction to express or extraordinary powers or expenses.

7.  Statutes—Construction—Meaning of Language.—The expression "general use of the Commonwealth" or "for state purposes" is the collective designation of the assets of the state, which furnish the means for the support of the whole government. There are certain great heads or subdivisions of public expenditures to which this income is credited or appropriated as provided by statute, and all receipts must be so prorated unless, in the statute pertaining to any given source of revenue, it be expressly provided that it shall be used for or credited to a certain, specific or designated purpose.

8.  Statutes—Construction—Intention.—Where the sense in which language was intended to be used can be clearly ascertained from the statute, its intention thus indicated will prevail and resort to other means of aiding the construction will be unnecessary.

9.  Taxation—Common School Fund.—The income to which the common school fund is entitled is not confined to those sources of revenue provided in section 4370, Ky. Stats., but may be supplemented from other sources.

10. Taxation—Inheritance Taxes—Apportionment.—The amount collected from inheritance taxes shall be apportioned to the same funds and in exactly the same ratio as income from ad valorem taxes. ·

M. M. LOGAN, ARTHUR M. RUTLEDGE and ALEX. P. HUMPHREY for appellant.

JAY W. HARLAN and CHARLES H. MORRIS, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Section 1, article 19, chapter 22 of the Acts of 1906 (Ky. Stats. of 1915, sec. 4281a, subsec. 1), relating to inheritance taxes, provides that all property which shall pass, by will or by the intestate laws of this state shall be subject to a tax of five dollars on every hundred dollars of the fair cash value of such property, to be paid to the sheriff or collector of the proper county for the *general use* of the Commonwealth.

From the passage of this act, to June 20, 1918, the auditors of public accounts distributed the amount received as inheritance taxes in the same manner as taxes and income derived from other sources. During this period there was set aside to the common school fund the same proportion of moneys collected by way of inheritance taxes as was set apart to the common school fund out of other taxes and income.

Taking the position that the common school fund was not legally entitled to any part of the inheritance taxes collected since March 25, 1918, appellee, the present auditor, declined to set apart to this fund the inheritance taxes so received after said date. To settle the question this agreed case was filed and from a judgment sustaining the contention of the auditor, the present appeal has been prosecuted. It is stated in the briefs that the sum due the schools from collections up to that time amounted to $417,928.50.

To the better understanding of the points involved we will refer briefly to certain provisions of our Constitution and statutes applicable here:

The Constitution provides:

Section. 171. "The general assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. . . ."

Section 183 requires the general assembly to provide for an efficient system of schools throughout the state.

Section 184 sets apart for common schools certain enumerated sources of revenue, and provides further:

"The interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education shall be appropriated to the common schools, and to no other purpose."

Thus we have ample constitutional authority and direction to provide funds sufficient for the estimated expenses of the state and the maintenance of the common schools.

During the extended legislative session following the adoption of the present Constitution two acts were passed which bear upon the question under investigation.

By an act of November 11, 1892 (Ky. Stats., 1894, sec. 4019), it is provided:

"An annual tax rate of forty-two and one-half cents upon each one hundred dollars of value of all property directed to be assessed for taxation, as hereinafter provided, shall be paid by the owner, person or corporation assessed. The aggregate amount of tax realized by all assessments shall be for the following purposes:

"Fifteen cents for the ordinary expenses of the government; five cents for the use of the sinking fund; twenty-two cents for the support of common schools; and one-half of one cent for the agricultural and mechanical college. . . ."

By an amendatory act of May 8, 1897, the rate was fixed at fifty-two and one-half cents upon each one hundred dollars of value for three years, and forty-seven and one-half cents thereafter, the school to receive twenty-two cents as in the original act (Ky. Stats., 1899, sec. 4019).

By an act of July 6, 1893 (Ky. Stats., 1894, sec. 4370), there is dedicated to the school fund certain interest, dividends, taxes and other income, including an annual tax of twenty-two cents on each one hundred dollars of value of all real and personal estate and corporate franchises.

In 1906 (March 15), there was a revision of the revenue laws of the state. This act provided for the levying

of an *ad valorem* tax, license taxes and an inheritance tax. This was the first inheritance tax law in our state. The first section of the act (Ky. Stats., sec. 4019), provides that:

"An annual tax of 50 cents upon each one hundred dollars of value of all property directed to be assessed for taxation, as hereinafter provided shall be paid by the owner, person or corporation assessed. The aggregate amount of tax realized by all assessments shall be for the following purposes: 21½ cents for the ordinary expenses of the government, 26 cents for the support of the common schools, 2 cents for the use of the sinking fund, ½ of one cent for the agricultural and mechanical college (now University of Kentucky). . . ."

Said act imposes an annual tax at the same rate which may be fixed by law on other personalty for state purposes upon each $100.00 of value of shares of banks and trust companies (Ky. Stats., sec. 4092). It also provides that the same rate of taxation for state purposes which is or may be in any year levied on other real estate, shall be levied upon the value of railroad bridges, rolling stock, etc. (Ky. Stats., sec. 4102).

In 1917, at a special session of the legislature, many revenue acts were passed and some of these have a very important bearing on this case. For the sake of brevity we will merely refer to them, giving the source of income and the application or distribution thereof, the first number indicating the chapter of the original act, the other the section of Carroll's Statutes, vol. 3 (1918):

License tax on corporations to be credited to the sinking fund. 7-4189a.

Tax on distilled spirits, distributed to the state road fund twenty per cent; to the school fund thirty per cent, and fifty per cent to the general expenditure fund of the state. 5-4214a, 1 and 2.

Excise tax on fermented liquor, to be credited to the general expenditure fund. 6-4212b, 1.

Race track license, 3-4223b, 1, 2, 3 and 4; and tax on bank deposits, 4-4019a, 1. No mention is made in either of these acts as to the application of the income provided.

Tax on oil production, for state purposes, 9-4223c, 1, as amended by an act of March 29, 1918. A similar ap-

plication is made of a tax on building and loan association. 14-4019a, 6.

Mortgage recording tax, credited to the sinking fund. 11-4019a, 6.

Chapter 11 fixes the levy at forty cents upon each one hundred dollars of value of all property subject to taxation divisible as follows:

"21½ fifty-fifths shall be for the ordinary expenses of the government, 26 fifty-fifths for the support of common schools, 2 fifty-fifths for the use of the sinking fund, ½ of one fifty-fifth for the University of Kentucky, and 5 fifty-fifths for the state road fund."

This section was amended by an act of March 5, 1918, chap. 4, p. 11 (Ky. Stats., 1918, sec. 4019), the distribution changed as follows:

"An annual tax of forty (40) cents upon each one hundred dollars ($100.00) of value of all property directed to be assessed for taxation, as herein provided, shall be paid by the owner, person or corporation assessed. Of the aggregate amount of tax realized by all assessments under this forty (40) cent tax, fifteen cents shall be for the use of the ordinary expenses of the government, eighteen cents for the support of the common schools, one cent for use of the sinking fund, one and three-quarter cents for the support and erection of buildings for the University of Kentucky at Lexington, five-eighths of one cent for the support and erection of buildings for the Eastern State Normal School located at Richmond, five-eighths of one cent for the support and erection of buildings for the Western State Normal School located at Bowling Green, and three cents for the state road fund, and the Auditor of Public Accounts will make distribution of said tax in accordance with the said apportionment at the end of each month."

As may be easily discerned from a reading of the foregoing the important question for decision, simply stated, is: Does the expression "for the general use of the Commonwealth" in the inheritance tax law (Ky. Stats., sec. 4281a), mean the same thing as "for the use of the ordinary expenses of the government," found in Ky. Stats., sec. 4019, *supra?*

It would seem that an answer to the proposition is found in the very statement thereof. That they mean two different things appears plain when we study the

two laws, a brief history of which we have endeavored to give.

When the intention of the law-making body is so apparent from the face of a statute that there can be no question as to its meaning, there is no room for construction. It is not allowable to interpret that which needs no interpretation. When language is clear and unambiguous it will be held to mean what it plainly expresses. It is an elementary rule of construction that words and phrases are used in their technical meaning if they have acquired one, and in their popular meaning if they have not.

Phrases and sentences are to be construed according to the rules of grammar, and from this presumption it is not permissible to depart, unless adequate grounds are found either in the context or in the consequences which would result from a literal interpretation.

Words of common use are to be understood in their natural, plain, ordinary and genuine signification as applied to the subject matter of the enactment.

Thus interpreted we have no hesitancy in saying that the expression "general use of the Commonwealth" means a use not limited or restricted to a precise import or application. It pertains to and affects the entire body politic; it is universal within the limits of the reference; i. e., it applies to all and not merely to some specific or particular part of the whole.

In Webster's Intl. Dict., general expense as applied to a railroad is defined as "a charge incurred for the benefit of the road as a whole, and not for any special department."

This definition has a special relevancy as applied to the various statutes relating to the levy and distribution of taxes and other sources of income in this state. The expression "ordinary expenses of the government" has always had a specific and distinct meaning, and one firmly fixed and recognized by the legislature. It clearly pertains to those common, usual, or ordinary expenses of the state, not otherwise specified. It represents one of the subdivisions into which the general funds are apportioned.

Ordinary expenses are the expenditures which are necessary to carry into effect the ordinary powers of the Commonwealth. This term is used in contradistinction

to express, or extraordinary powers or expenses. Take for example the 1918 act; the taxes realized from the forty-cent assessment are classified and credited to (1) common schools, (2) sinking fund, (3) University of Kentucky, (4) Eastern and Western Normal Schools, (5) state road fund, and (6) the ordinary expenses of the government. The latter necessarily includes those items of expenditure not otherwise specifically enumerated. And so through all the statutory changes the common schools and the ordinary expenses have been recognized and designated as two of the chief items into which the general funds have been distributed.

There are a number of objects and purposes for which the state needs funds and obtains them, either from its revenue, income or taxation.

In speaking of the state's revenue in its entirety we refer to the funds as having been collected for state purposes, or for the general use of the Commonwealth; that is for all purposes. This "general use" or "state purpose" is the collective designation of the assets of the state which furnish the means for the support of the whole government.

There are certain great heads or subdivisions of public expenditures to which this income is credited or appropriated as provided by statute, and all receipts must be so prorated unless, in the statute pertaining to any given source of revenue, it is expressly provided that it shall be used or credited to certain specific or designated purposes.

The expense fund is sometimes referred to as the general expenditure fund, in other words a fund for general expenses, i. e., expenses not provided for from other revenue; both have the same meaning. This is made plain in the 1917 act, chapter 5, relating to the license on distilled spirits which is apportioned to the state road fund, the school fund and general expenditure fund.

Thus the statutes themselves furnish the best means of their own exposition, and since the sense in which language was intended to be used can be clearly ascertained from their parts and provisions the intention thus indicated will prevail and it will not be necessary to resort to other means of aiding the construction.

Appellee confounds the general fund, i. e., the income for state purposes, with one of the charges upon it and treats the fund and the charges as convertible terms, whereas the general expenditure fund or the fund for the ordinary expenses of the government is but one of the subdivisions of the whole.

In United States v. Goldenberg, 168 U. S. 95, 18 S. C. Rep. 3, 42 Law Ed. 394, it is said:

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he used. He is presumed to know the meaning of words and rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislature. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent."

See also Lewis' Sutherland Stat. Const., secs. 366 and 367; Endlich on Interpretation of Stats., secs., 1, 2 and 8.

City of Louisville v. Button, 118 Ky. 732, 82 S. W. 293, furnishes a good illustration of the rule. The charter of cities of the first class provides (Ky. Stats., sec. 2981): "In the ordinance fixing for any year the tax rate, the general council shall subdivide its levy as follows: A levy for schools, . . . a levy for sprinkling streets, . . . and a levy for general purposes, . . ."

The levy ordinance for 1904 passed by the general council of the city of Louisville made no provision for street sprinkling, and it was sought to appropriate $15,000.00 of the general purpose fund for street sprinkling. In sustaining the lower court, which denied the right to so appropriate this money, we said:

"The question then narrows itself down in this case to the one whether 'street sprinkling' is embraced in the term 'general purposes.' Without undertaking to define here what may be included in the latter term, we are clear that its being enumerated with some dozen other divisions, each of which is required to be provided for expressly, if at all, negatives the proposition that one embraces the other. For, if that were true, it would be within the power of the council to levy the whole tax under the head of 'general purposes,' defeating entirely

the motive of the legislation requiring a particularization of subjects for which taxes are to be levied. The attempted deflection of the 'general purpose' fund complained of was illegal and was therefore properly enjoined."

The general purpose fund of cities of the first class bears the same relation to the city's budget or general fund as the general expenditure fund of the state bears to money collected for state purposes.

City of Louisville v. Louisville School Board, 119 Ky. 574, 84 S. W. 729, involved the construction of Ky. Stats., sec. 3004, which says: " . . . the penalty provided for herein (meaning the penalty on unpaid tax bills, Ky. Stats., sec. 2998), shall go to the tax receiver for the benefit of the city."

While admitting there was some force in the school board's contention in that case that it was entitled to its proportion of this penalty, the court points out that in the original tax law of the city of 1884, which was substantially the same as the one then in force (1905), that which was called a penalty was then called a commission, and went to the tax receiver for his own benefit, and in the new law "commission" is substituted for penalty, and since the tax receiver's office had been put on a salary basis, the city instead of the officer should receive the money.

Another ground for reversal in the above case was the contemporaneous construction of the statute by the city officials.

A similar conclusion was reached in Fuqua, Supt. v. Hager, Auditor, 119 Ky. 407, 84 S. W. 325, regarding the schools' proportion of the tax on premiums received from foreign insurance companies.

Practically the identical question raised by this appeal was decided in Auditor v. Trustees Frankfort Common Schools, 81 Ky. 680, in which it was sought by mandamus to compel the auditor to transfer from the account of revenue for the ordinary expenses of the government to the common school fund, certain sums collected from the railroads from 1879 to 1883. Section 10 of article 12, chapter 92, title "revenue and taxation" of the general statutes, 1883, reads:

"All money paid into the treasury under this article shall be for the *ordinary expenses* of the government."

While the court in the opinion confuses the expression "ordinary expenses" and "general purposes," in referring to section 10, *supra,* it pointedly states:

"But for this express appropriation of the tax thus raised to a designated purpose (ordinary expenses) it would be applied as other taxes levied upon property *in general.*"

Here we have a positive declaration of this court upon the precise question now before us and we adhere to the conclusions therein reached.

It is argued that even though the school fund was entitled to its proportion of the inheritance taxes prior to 1918, the act of that year limited the schools to such tax only as was realized by the assessment of the property mentioned under the 40-cent rate.

This alleged change in the statute is found in the words italicized:

"Of the aggregate amount of tax realized by the assessment *under this 40-cent rate,* 15 cents shall be *for the use of* the ordinary expenses of the government, 18 cents for the support of common schools, etc."

We fail to comprehend the force of this argument, because, if the schools be limited to such taxes only as may be realized under this 40-cent rate, why not place a like limit upon the other enumerated objects and purposes of the state's disbursements, such for instance as the ordinary expenses of the government?

Just how or why the stricture should be applied to the schools we cannot see. Is it not a matter of the "pound of flesh" after all, and could a separation of the items be decreed without involving the very fund it is sought to enrich?

It is also contended that sec. 4370, Ky. Stats., provides exactly what shall constitute the common school fund, and the income of this fund is limited as therein provided. We do not so understand the statute, nor has the legislature so interpreted it, because in subsequent acts, notably in 1917, it has expressly supplemented the school fund from other sources. The Constitution does not so limit it. Section 184 provides that the schools shall be entitled to the items therein specified together with such other sums as may be produced by taxation or otherwise. And this is in keeping with section 171 of the Constitution, providing for the levy of an annual tax

which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year.

Counsel asks how the inheritance taxes are to be apportioned if the schools are entitled to participate. The answer, beset with no difficulties, is, exactly as the *ad valorem* taxes are divided.

The ratio should be the same as provided by section 4019, Kentucky Statutes, viz.: eighteen cents out of each forty cents collected, the other funds enumerated in the statute to receive their proper share.

The law making power of the state is entitled to at least as strong a presumption in favor of the validity of its acts as is a criminal on trial in favor of his innocence.

We must give some meaning to the various statutes passed at the special session of 1917, wherein certain licenses were appropriated to certain specific purposes.

In these, as well as in the general revenue act of 1906 and other statutes, the legislature recognizes the distinction between a fund for the general use of the Commonwealth and one for its ordinary expenses, and when it intended a certain income to go to a specific fund or funds, it so declares, and in the absence of such a designation, or where it is set apart for state purposes, or the general use of the Commonwealth, it will be treated as a general fund for the benefit of all and not for just one of the subheads. All statutes shall be construed with a view to carry out the intention of the legislature. Ky. Stats., sec. 459.

"Where a statute that has been construed by the courts has been re-enacted in the same, or substantially the same, terms, the legislature is presumed to have been familiar with its construction, and to have adopted it as a part of the law, unless it expressly provides for a different construction. So where words or phrases employed in a new statute have been construed by the courts to have been used in a particular sense in a previous statute on the same subject, or one analogous to it, they are presumed, in the absence of a clearly expressed intent to the contrary, to be used in the same sense in the new statute as the previous statute. These rules are also extended to statutes, and parts of statutes that have been re-enacted after having received a prac-

tical construction by the legislative or executive departments of the government.'' 36 Cyc. 1153.

The conclusion herein reached renders unnecessary a discussion of the question of contemporaneous construction; besides, as said in Bosworth v. Marshall, 165 Ky. 32, 176 S. W. 348:

''This rule is not resorted to by the courts unless the statute is ambiguous and uncertain in its terms and it is really difficult to ascertain its true meaning; and, where, even though it has been given one interpretation by the administrative officials for a term of years its meaning is plain and easily understood, the courts will not adopt the erroneous interpretation put upon it by the administrative officials.''

We find no ambiguity in the statute, but did we so find, the construction given the statute by the legislature and state officials from 1906 to 1918, would tend strongly to support the position and contention of appellant.

We are enjoined by the Constitution to hold the school fund inviolate. How jealously the courts have guarded this fund can be seen from the cases in which it was sought to appropriate a part thereof. The legislature has likewise shown an ardent and active interest in the schools of the state and evinced in many ways its desire to protect and extend the wholesome influence of those institutions, commonly referred to as the bulwarks of our civilization. Kentucky's future depends largely upon the intelligence and education of its children, and where the legislature has so plainly and appropriately indicated its purpose to further the cause of education in this Commonwealth it is our agreeable duty to carry into effect that intention, and, so construing the statute, we conclude that the income from inheritance taxes shall be apportioned to the common school fund and the other objects and purposes referred to in section 4019 Kentucky Statutes, and in the ratio therein provided.

For the reasons given the judgment of the lower court will be reversed, with instructions to enter judgment in accordance with the prayer of the petition, directing the auditor of public accounts to place to the credit of the school fund its due proportion of the funds received from inheritance taxes.

Whole court sitting.