## Murray et al. v. Gill, Chairman of Democratic Committee, et al.

(Decided June 11, 1937.)

HUBERT MEREDITH for appellants.

PETRIE & DAVIS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Section 1596a-2, 1930 (1936) Ky. Stats., directs that the State Board of Election Commissioners appoint two members of a county board for each county in the state "annually in the month of August." The State Board was called to meet on August 27, 1936, for the purpose of selecting and appointing election commissioners for the 120 counties of the state. The county board is composed of the sheriff, ex officio member, and one member of the Democratic and one of the Republican Party, selected by the State Board. The functions of the county board are important, particularly since the enactment of what is known as the "Brock-Gilbert" election law, and its members are officers within the meaning of the word.

The pleadings set out that prior to August 17, 1936, pursuant to action taken by the Democratic Committee of Todd County, Gill as Chairman of the Democratic Committee, prepared and on August 17 duly certified a list of five names of qualified persons to be presented to the State Board, from which to select a commissioner for Todd county. The five persons thus selected are appellees.

It is alleged same was furnished to the State Board prior to August 26, the day before that body's meeting was to be held. It was also alleged that appellants were informed that the State Board meeting was held contrary to the notice on August 26. But whether this be true or not (and there is no proof), when the board did meet it is claimed it disregarded the list so said to have been furnished, and attempted to appoint appellant Walter Murray, and issued him a commission.

Appellants claim that under the statute one of their number was entitled to be appointed county election commissioner; that the State Board had no authority to

consider or appoint any person whose name did not appear on the list furnished that board.

The clerk of the county court is required under the statutes to file the certificate showing the appointment of the county member, and he was made party defendant for the purpose of seeking an injunction to prevent him from receiving the commission of Murray, and from administering to him the oath of office. It was also sought to have appellant Murray enjoined from presenting his alleged certificate or commission for the purpose of qualifying.

On the day of the filing of the petition the plaintiffs below, appellees here, executed bond, and the clerk of the Todd circuit court issued a temporary order which had the effect of restraining appellant Murray from presenting his commission, and the county clerk from administering the required oath. At the same time notice was given that plaintiffs, at a time and place named, would move the judge of the circuit court to grant a permanent injunction.

The petition was filed on August 29, 1936, and on September 18, L. M. Weathers filed an intervening petition in which it was alleged that on August 22, 1935, he was the duly appointed and commissioned Democratic commissioner for Todd county; that by the terms of the statute he was thus appointed for a period of one year and until his successor be duly appointed and qualified. He charges that the attempted appointment of Murray was illegal and without authority on the part of the State Board. His position as to Murray's appointment was the same as taken by the plaintiffs below, and on the basis of his pleading he asserted that he had the right to serve until such time as his successor be legally appointed.

On the same day appellant filed a special demurrer, which the court overruled, whereupon the defendant Murray moved the court to require plaintiffs to make the petition more definite, and to file the minutes of the meeting at which the five appellees were selected and their names ordered certified to the State Board. This motion the court sustained.

By their amendment it is alleged that the chairman of the Todd County Committee called a meeting for August 14, to be held in the county court clerk's office;

that in response a number of the committeemen, less than a quorum assembled. But it was said that prior to this called meeting the chairman consulted personally with a number of committeemen, which number, when counted with those present on the call, constituted a majority of the committee; that those consulted personally approved the certification of the persons whose names were later certified to the State Board, or indicated that they would agree to any action taken by those members who might be present at the meeting. In conformity with that agreement the chairman says he certified the list to the State Board. We know of no parliamentary rule which permits less than a quorum of an organized body to take action.

It is then alleged that it has been the universal custom for the chairman to certify the list without calling the committee together, and that such certification has always been accepted and acted on by the State Board, and that by reason thereof *"they are* estopped from questioning the validity of his list." The State Board was not made a party.

It is said that prior to the 17th day of September, 1936, the chairman called each and every member of the committee by writing, to meet in the courthouse in Elkton at 2 p. m. on the 12th of September, and that pursuant to that call there was present in person or by proxy "a number largely in excess of a majority of the committee, and that at this meeting a resolution was offered and adopted ratifying and confirming *his former acts as chairman* in certifying the list theretofore sent to the State Board, and requested the State Board to make appointments from said former list."

In conformity with the court's ruling that he do so, appellee filed, not the minutes of a meeting held prior to August 17, but of an alleged meeting on September 12. This record showed a meeting of that date at which were present fifteen members from a total of twenty-six precincts. There was shown to have been two vacancies, with six absentees. The resolution offered and adopted was as stated above.

To the petition as amended general demurrer was filed, and without waiving either the special or general demurrer, appellee filed his answer, by which he denied all the allegations of the petition and the petition of

Weathers. In a second paragraph he pleaded his qualification for the office of county commissioner, and that on August 27, 1936, he had been appointed by the State Board to such office and had received a commission or certificate.

In a third paragraph it is alleged that the county committee did not file or authorize the filing of any list of names of five or any number of Democrats, with the State Board; that if the chairman submitted the five names alleged to have been filed, it was done without authority of the county committee, and this being true the State Board, under the statutes, had the right to appoint a Democrat possessing the requisite qualifications, which right it exercised in appointing appellant. He prayed that the temporary injunction be dissolved and appellee's petition dismissed.

By rulings of the court the demurrers, both special and general, were overruled, and by agreement the affirmative matter set out in the amended petition and such affirmative matter as appeared in appellant's pleadings were controverted of record. The court overruled motion to strike Weather's intervening petition from the files, and ruled that the plaintiffs had the burden of proof. A motion to strike from the files the exhibit of record of meeting of the committee of September 12, 1936, was also overruled.

On the trial the only proof introduced was by affidavit. Appellee Gill stated that he was the duly elected chairman of the Democratic Committee. He then reiterates, in part, the allegations of his petition and amended petition except he says that on August 17, 1936, he certified the list to the State Board, and mailed it to the secretary of the State Democratic Committee with a request that he file same with the board, and charges that it was so filed, and was before the board at the time it made the alleged selection of appellee. He then sets out in substantially the words of the petition, the general practice and custom for the chairman to certify the list, which plan, according to custom, had been acquiesced in for many years by the State Board. No other proof was offered on behalf of appellees. Counter affidavits, to the number of twelve or more, were filed in which it was stated that the affiants had never been notified of or attended any meet-

ing during August or September. No other proof was offered.

In appellant's brief it is urged: (1) That a court of equity should not interfere by the injunctive process to determine questions concerning the appointment or election of public officers or their title to office; (2) that appellees were without legal capacity to maintain action to oust appellant from office; and (3) that no list from which to select a county commissioner was filed as required by law, and the State Board had the right to ignore a spurious list and make an appointment of its own selection, provided the person selected be qualified.

After a careful reading of the entire record, we deem it unnecessary, in view of the conclusion we have reached, to discuss or determine these various contentions. As to the right of the parties plaintiff to maintain their action, and the power of a court of equity to take cognizance thereof, we refer to the case of Russell v. Rhea et al., 269 Ky. 138, — S. W. (2d) — , decided by this court on June 4, 1937.

The case presented to us turns on an entirely different ground from any one of those presented for appellant, and that ground is that appellees failed completely in showing that they were entitled to equitable relief; far short of such as would entitle them or any of them to the relief by way of injunction.

It should be noted that the injunctive relief here sought, and granted, was twofold. By the granting of this relief the county court clerk was prevented from performing a ministerial duty, that of accepting Murray's commission and administering an oath. Murray presented to the clerk prima facie evidence of his appointment as county election commissioner. In order to prevent the clerk from performing his statutory duty, and Murray from qualifying, it must have been made very clear that the clerk was transcending his duties, and equally as clear that Murray's title to office was spurious. An injunctive order is an unusual and harsh remedy which should not be granted or allowed, except upon clear and positive averments of the existing equities upon which the application therefor is based.

We eliminate from the case the claim that the ac-

tion of the chairman was valid because it had become a "crystalized practice for the chairman, without even consulting the membership of the committee, to furnish the State Board with the requisite five names of nominees or selectees." We take the allegations to constitute a plea of contemporaneous construction of a statute. This plea is only available and will only be considered by the courts when the statute sought to be construed is vague, uncertain, or ambiguous. This principle of construction is made clear in Gilbert v. Greene, 185 Ky. 817, 216 S. W. 105; Sewell v. Bennett, 187 Ky. 626, 220 S. W. 517.

At this point may we say that the part of the statute in question (section 1596a-2) is not subject to criticism on account of vagueness or ambiguity. It provides in plain terms that the appointment by the State Board shall be from a list of five names designated in writing "by each of the *county executive committees* of the two political parties," one to be appointed from each list, if any are so designated. This statute is clear and unequivocal. There is no semblance of ambiguity. And may we say at this point that we construe the statute to mean exactly what it says, that is, the list furnished must be one designated by the county executive committee, not a list designated by the chairman thereof. The chairman, may of course, certify the committee's action to the Board.

Appellee's plea of contemporaneous construction, as pleaded, weakens the case of appellees. If the action of "prior to August 17, 1936," was of the committee, there would be no reason for the plea as stated, and the failure to allege or prove committee action constitutes the failure to furnish the basis for equitable injunctive relief. Again the alleged meeting of September 12, long after Murray's appointment, as set out in the pleadings, indicates a very decided weakness in such procedure and action as was had "prior to August 17th."

The original petition came near to pleading a basic cause for relief, but such efficacy as it manifested was totally effaced by the amended petition, which failed in all respects to show that there had been any prior committee action. The proof only added, if the expression may be used, further failure to evidence committee action. The meeting of September 12, long after the date

of action, or time for action by the State Board, offers no possible curative effect to prior action or inaction.

It is needless for us to digest the pleadings and proof any further than as has heretofore been done. Mention might be made of the fact that it is pleaded as a conclusion that the list furnished by appellee chairman was in fact furnished to the board, but be this as it may, it is immaterial, except insofar as may serve to illustrate a part of the general failure to at least plead a cause which would justify a court in granting relief by injunction.

The only question we here undertake to and do determine is whether or not the appellees presented to the court a pleading sufficient to support the court's order. From a careful review, we conclude that the pleadings and proof in no wise uphold the judgment; hence we must reverse the judgment entered below, with directions to the court to set aside the order of injunction and to discharge the temporary restraining order.

Whole court sitting, except Justice Clay.