LUIS A. ARCHILLA LAUGIER ET AL., Petitioners, *v.* REXFORD G. TUGWELL, GOVERNOR OF PUERTO RICO ET AL., Respondents.

No. 399. Argued April 10, 1944.—Decided April 20, 1944.

---

[1] See also §§559–610, Civil Code, 1930 ed.

398

Luis A. Archilla Laudier, in pro per., and J. J. Ortiz Alibrán for petitioners. Jesús A. González, Acting Attorney General, and Fernando B. Fornaris, Assistant Attorney General, for respondent, Governor of Puerto Rico. The other respondents did not appear.

Mr. Justice De Jesús delivered the opinion of the court.

Luis A. Archilla Laugier and José Enrique Gelpí filed in this court a petition for a peremptory writ of mandamus against Hon. Rexford G. Tugwell, Governor of Puerto Rico, ordering him to appoint them immediately, pursuant to the statute, regular member and substitute member, respectively, of the Insular Board of Elections representing the Liberal Party of Puerto Rico. The grounds supporting said petition may be summed up thus: that the petitioners are qualified voters in this Island, that they are members of the Liberal Party of Puerto Rico; that due to the resignation of the representative of said political party in the Insular Board of Elections prior to March 12, 1944, the central directing body of the Liberal Party of Puerto Rico, that is, the central committee of said party, in a meeting held on March 12, 1944, unanimously agreed to request from the Governor the appointment of the petitioners herein for said positions; that on March 30, 1944, said party presented to the Governor of Puerto Rico an official petition, certifying said agreement and requesting the appointment of the petitioners to fill said offices, and that on the same day the Governor appointed Gustavo Cruzado Silva and Ernesto Mieres Calimano for said offices as representatives of the Liberal

Party of Puerto Rico, the said appointees not having been recommended by the central directing body of the political Party; that the above-mentioned agreement of March 12, 1944, has not been modified or repealed in any way, and they further alleged, on information and belief, that the Governor appointed Gustavo Cruzado Silva and Ernesto Mieres Calimano at the request of José Ramírez Santibáñez, President of the Liberal Party of Puerto Rico, which request had not been submitted to nor discussed or approved by the central directing body of the party; that said request was made by José Ramírez Santibáñez before the official petition was presented by the central committee, and that said official petition was sent to the Governor before he issued commissions to Gustavo Cruzado Silva and Ernesto Mieres Calimano; that said appointments are void because it is the ministerial duty on the part of the Governor to appoint the persons designated by the central directing body of the Liberal Party of Puerto Rico; that at the time of filing defendants' petition, Gustavo Cruzado Silva and Ernesto Mieres Calimano had not yet taken possession of said offices but intended to do so. As an incident to the remedy of mandamus, petitioners moved this court, in aid of its jurisdiction, to enjoin the defendants, Gustavo Cruzado Silva and Ernesto Mieres Calimano, from taking possession of said positions and to restrain them from taking part in the decisions, discussions, etc., of said Insular Board of Elections, offering to furnish any bond that this court might deem reasonable as a condition for the issuance of said peremptory relief.

Pursuant to the petition of mandamus and to §1 of the Election Law, and after petitioners had furnished bond for $500 in this court we issued the peremptory writ of mandamus and the restraining order sought.

The Governor appeared and filed his answer setting forth the reasons why, in his opinion, the writ of mandamus did not lie. He alleged that he appointed Gustavo Cruzado Silva

and Ernesto Mieres Calimano at the official written request of José Ramírez Santibáñez as President of the Liberal Party of Puerto Rico, and that said request reached him prior to the petition sent on March 30, 1944, by José Enrique Gelpí, as secretary of the Liberal Party of Puerto Rico, and received by the Governor on the 31st of the same month and year. The Governor denied that the petition of the central committee of the Liberal Party of Puerto Rico had been delivered or sent to him before making the appointments in favor of said gentlemen, but, on the contrary, alleged that when he received it, he had already appointed them and that Gustavo Cruzado Silva had already taken oath before the Executive Secretary. The Governor further alleged that said appointments are not illegal nor void because they were made in compliance with the statutory provisions, and that he was unable to appoint the petitioners because he had already legally appointed the above-mentioned gentlemen at the request of the President of the Liberal Party of Puerto Rico. Lastly, he alleged that Gustavo Cruzado Silva had already taken possession of the office and as special defenses he set forth: (1) that the petition does not state facts sufficient to constitute a cause of action; (2) that Gustavo Cruzado Silva had already taken possession of his office on the 1st day of the instant month and that there was no cause for removal; (3) that the defendant was unable to comply with the alternative writ of mandamus because, under the circumstances above set forth, he would be appointing two different persons for the same office, and (4) that the adequate relief is *quo warranto* and not mandamus.

Defendants Gustavo Cruzado Silva and Ernesto Mieres Calimano did not appear in person nor by brief.

The petitioners called José Enrique Gelpí as their only witness, who identified the minutes of the meeting of the central committee of the Liberal Party of Puerto Rico held on March 12, 1944, and introduced a copy of the official pe-

tition of March 30, 1944, sent to Hon. Rexford Guy Tugwell, Governor of Puerto Rico, signed by the witness in his capacity as secretary of the central committee of the Liberal Party of Puerto Rico. Both documents were introduced in evidence and admitted without. Mr. Gelpí also testified that he sent said official petition by messenger and was received at Fortaleza on the very same day, March 30, at 6:45 p. m.; that the recommendation made by the central directing body in favor of Luis A. Archilla Laugier and of the witness has not been repealed; that since March 12 no other meeting has been held either by the central committee or by any other body of the party, and that at no time has the central committee of the Liberal Party of Puerto Rico agreed to recommend to the Governor Messrs. Gustavo Cruzado Silva and Ernesto Mieres Calimano for said offices.

The recital of the allegations and the evidence which we have just set forth leads us to the question of determining the scope of the authority conferred upon the Governor, by law, to make these appointments.

Section 1 of the Election Law, as amended in 1934, established the Insular Board of Elections and provides that said board shall be composed of a general supervisor of election, as chairman, who shall be appointed by the Governor with the advice and consent of the Senate of Puerto Rico, and three persons representing the three principal political parties of Puerto Rico, and a substitute for each one of said members, "all of whom shall be appointed by the Governor at the request of the central directing bodies of said parties." The Governor does not deny that it is his ministerial duty to appoint for said offices persons who are recommended by the central directing bodies of their respective party, and admits in his brief, that if he had not previously appointed Gustavo Cruzado Silva and Ernesto Mieres Calimano, mandamus would lie against him.

Since the defendant correctly construing the law, grants the existence of said ministerial duty imposed by the statute, we must now ask: Did the defendant comply with his duty in appointing two persons at the request of the President of the Liberal Party of Puerto Rico, when the central committee, which is the central directing body of said party, had designated the petitioners herein for said offices? The defendant contends in his brief that the Act provides that the Governor shall make the appointments for said offices at the request of the central directing bodies of the respective parties, but that such provision does not require that said bodies appear in person before the Governor and deliver their petition; that since the President of the Liberal Party of Puerto Rico sent the petition in his capacity as president, the Governor was not bound to make an investigation in order to determine whether the president really had any authority to act thus, but on the contrary that, pursuant to §102 of the Law of Evidence, it should be presumed that the law had been complied with. They further contend that on two previous occasions, the President and the Secretary of the Liberal Party of Puerto Rico, who are the same persons now holding said offices of president and secretary, respectively, sent to the Governor petitions similar to the one now sent by Ramírez Santibáñez without any objection being raised by said party.[1]

It is obvious that the law can not be so absurd as to purport that the central directing body should appear in

[1] The petition of March 11, 1944, sent by Ramírez Santibáñez to the Governor and which reached the latter on the 30th of the same month and year, reads as follows:

"Hon. Rexford Guy Tugwell, Governor of Puerto Rico,
San Juan, Puerto Rico.—Sir:

"Due to the resignation of a regular member and a member pro tempore of the Liberal Party of Puerto Rico in the Insular Board of Elections, I hereby submit to your Honor the names of the following persons to substitute said officers:

"For regular member, Attorney Gustavo Cruzado Silva.

full before the Governor to present the petition for the appointments, and the petitioners do not pretend any such thing, but this does not mean that the president of the party, who is the executive of the central committee and nothing else, may of his own account and ignoring said committee, make an individual petition to the Governor, asking him to appoint certain persons for the offices in question, for that would be tantamount to attributing to the president of the party a power which the law expressly conferred on the central directing body.

In *Murray* v. *Gill* (Ky., 1937), 106 S. W. (2d) 634, a controversy similar to the one herein was involved. The Kentucky statute provides that the State Board of Election Commissioners appoint two members of a county board for each county in the state "annually in the month of August." On August 17 the Democratic Committee of Todd County, with Gill as Chairman, presented to the State Board a certified list of five names of qualified persons from which to

---

"For substitute member, Attorney Ernesto Mieres Calimano.

"Respectfully yours,

"(Signed) José Ramírez Santibáñez, President of the Liberal Party of Puerto Rico."

Compare it with the communication sent by Mr. Gelpí on March 30, 1944, on behalf of the central committee:

"Hon. Rexford Guy Tugwell, Governor of Puerto Rico,

"La Fortaleza.—My dear Governor Tugwell:

"The Central Committee ('Junta Central') of the Liberal Party of Puerto Rico, on the 12th day of March, 1944, adopted a resolution, which I hereby communicate to you, designating Messrs. Luis A. Archilla Laugier and José Enrique Gelpí, respectively, as the representative and alternate representative of said principal political party in the Insular Board of Elections.

"Pursuant to Section 1 of the present Election Law (Laws of Puerto Rico, 1934, Regular Session, page 188), the central directing body of the Liberal Party of Puerto Rico hereby recommends and requests the appointment of said representatives of the Liberal Party in the Insular Board of Elections.

"Due to the pressing matters pending in the Insular Board of Elections, which should not be considered without the proper representation provided by law, immediate action on these appointments is requested.

"Respectfully yours,

"(Signed) José Enrique Gelpí, Secretary, Central Committee (Junta Central, Partido Liberal Puertorriqueño)."

select a commissioner for Todd county. When the board met, it disregarded the list and attempted to appoint appellant Walter Murray and issued him a commission. Thereupon the five persons certified by the Democratic Committee of Todd County on August 17, 1936, with Gill as Chairman, filed a petition for injunction against Walter Murray and made party defendant the clerk of the county court for the purpose of seeking a restraining order to prevent Murray from presenting his commission and the county clerk from administering the required oath.

The petition for injunction was filed on August 29, 1936, and on September 18, L. M. Weathers filed an intervening petition in which it was alleged that on August 22, 1935, he was duly appointed and commissioned Democratic commissioner for Todd county; that by the terms of the statute he was thus appointed for a period of one year and until his successor be duly appointed and qualified. He charged that the attempted appointment of Murray was illegal and without authority on the part of the State Board. His position as to Murray's appointment was the same as that taken by the plaintiffs below, and on the basis of his pleading he asserted that he had the right to serve until such time as his successor be legally appointed.

Subsequently the plaintiffs amended their petition for injunction and alleged that Gill, Chairman of the Todd County Committee, called a meeting for August 14, to be held in the county court clerk's office; that in response a number of the committeemen, less than a quorum assembled; but it was said that prior to this called meeting the chairman consulted personally with a number of committeemen, which number, when counted with those present on the call, constituted a majority of the committee; that those consulted personally approved the certifications of the persons whose names were later certified to the State Board. In conformity with that agreement the chairman says he cer-

tified the list to the State Board. It was then alleged that it has been the universal custom for the chairman to certify the list without calling the committee together, and that such certification has always been accepted by the State Board, and that by reason thereof "they (State Board), are stopped from questioning the validity of his list." The State Board was not made a party.

In deciding the question raised the court said:

"We eliminate from the case the claim that the action of the chairman was valid because it had become a 'crystalized practice for the chairman, without even consulting the membership of the committee, to furnish the State Board wth the requisite five names of nominees or selectees.' We take the allegations to constitute a plea of contemporaneous construction of a statute. This plea is only available and will only be considered by the courts when the statute sought to be construed is vague, uncertain, or ambiguous. This principle of construction is made clear in *Gilbert* v. *Greene*, 185 Ky. 817, 216 S. W. 105; *Sewell* v. *Bennett*, 187 Ky. 626, 220 S. W. 517.

"At this point may we say that the part statute in question (section 1596a–2) is not subject to criticism on account of vagueness or ambiguity. It provides in plain terms that the appointment by the State Board shall be from a list of five names designated in writing 'by each of the *county executive committees* of the two political parties', one to be appointed from each list, if any are so designated. This statute is clear and unequivocal. There is no semblance of ambiguity. And may we say at this point that we construe the statute to mean exactly what it says, that is, the list furnished must be one designated by the county executive committee, not a list designated by the chairman thereof. The chairman may of course certify the committee's action, to the State Board."

The same doctrine was laid down in *State* v. *Rhodes* (Mo., 1942), 163 S. W. (2d) 978, 980.

 The Election Law of Puerto Rico does not fix a term within which the central directing body of the party must present to the Governor the list of persons for said offices. This being so, whenever the central directing body

presents its petition, the Governor is bound to act in conformity therewith, and the fact that the president of the party, in violation of the law, previously presents him a list prepared by him, ignoring the committee, is no legal excuse for his noncompliance with said ministerial duty. But the defendant alleges, although he failed to prove it, as there is no evidence supporting said allegations, that when he received the petition from the central committee, he had already appointed the persons designated by the president of the party; that defendant Cruzado Silva had taken oath and by the time that the petition for mandamus had been filed, he had already taken possession of his office; that the defendant had no reasons to remove him; and that he was unable to appoint the persons designated by the central committee because then there would be two persons filling the same office. The defendant further argues that the adequate remedy is *quo warranto* and not mandamus, since Gustavo Cruzado Silva and Ernesto Mieres Calimano, already appointed, can not be separated from their offices without a hearing and, therefore, they had to be made parties in a *quo warranto* proceeding. In his brief the defendant cites a long list of cases in order to prove that when the office is filled by another person, even though the latter is a *de facto* officer, mandamus does not lie unless plaintiff had filled the office previously and been illegally removed. He cites the cases of *Gil v. Chardón, Commissioner,* 41 P.R.R. 208; *Branizar v. Mendín, Mayor,* 43 P.R.R. 27; and *Blanco v. Domenech, Treas.,* 45 P.R.R. 827. The defendant further alleges that one of the most important reasons for denying the mandamus, where another person is filling the office from which plaintiff was not illegally removed, is that within the mandamus, the person holding the office, who will be the person directly affected by the judgment, is given no opportunity to be heard and does not have his day in court to defend his rights.

It is a well-settled rule that where a public office has no fixed period, and it may not be legally inferred that the lawmaker's intention was to create such office for life unless removed for cause, the incumbent fills the office at the will of the appointing officer, who may exercise his power of removal at any time without notice, hearing, just cause, or any explanation whatsoever. The mere act of appointing his successor removes him from office. *Blake* v. *United States,* 103 U. S. 227; *Kinsland* v. *Mackey* (N. C., 1940), 8 S. E. (2d) 598; *Garnier* v. *Louisiana Milk Commission* (La., 1942), 8 So. (2d) 611; *Cook* v. *St. Francois County* (Mo. 1942), 162 S. W. (2d) 252, 254. See also annotation in 99 A.L.R. 381, collecting cases of various jurisdictions of the United States, including the Federal Supreme Court and cases from Canada and England.

Having reached that conclusion, and considering that the terms of the offices in question are not fixed by law, said offices are filled at the pleasure of the appointing power and the incumbents thereof may be removed at any time without notice, hearing, or just cause. The appointment of petitioners by the Governor, in furtherance of the ministerial duty imposed on him by §1 of the Election Law, would eliminate incumbents' right to the offices, and the petitioners would then be in a position to take possession of said offices.

This being so, there is no reason why the writ of mandamus should be denied, since in legal contemplation the situation is exactly the same as if the offices were not held by other persons. *Blake* v. *United States, supra,* Cf. *State ex rel. Ayres* v. *Kipp,* 10 S. D. 495.

In the case of *Commonwealth* v. *Gibson* (Pa., 1934), 175 A. 389, on which defendant lays great stress asserting that its facts are similar to those of the case at bar, the court held that mandamus did not lie, that the proper remedy would have been an action of *quo warranto.* However, that

case may be distinguished from the case at bar. In the former, contrary to the instant case, the appointment was made for the term of one year, and hence the incumbent did not hold possession at the pleasure of the appointing power. Therefore, he could not be removed from office without a previous hearing. If in the present case the offices in question would have had a fixed period of tenure, we would feel bound to agree with the defendant that the proper remedy was *quo warranto* and not mandamus.

Lastly, the defendant copies on page 16 of his brief the definition of a *de facto* officer from the syllabus of *State* v. *Wayne County Court* (W. Va., 1922), 114 S. E. 517. However, on examining the case, we shall readily see that it supports petitioners' contention. The facts of said case are as follows:

The Republican county committee of Wayne county is entitled to present the county court a list of election officers and a meeting was called for that purpose. Said committee is composed of twelve members and pursuant to the notice there appeared on the day set five regular members and another one holding a proxy. These six members called upon the chairman to hold the meeting, but when the latter refused to attend any meeting, they met and elected an additional member to fill a vacancy caused by the removal of the member from the county. These seven members constituted a *quorum*. One of them acting as chairman *pro tempore* and another as secretary, they certified the list of election officers to be presented to the county court for the appointment of said officers. On the same day the chairman of the committee also certified a list of election officers, claiming that the committee had had no regular meeting. The county court appointed the list certified by the chairman, and rejected the list certified by the committee. The members of the committee appealed to the Supreme Court of Appeals of

West Virginia and prayed for a writ of mandamus to compel the county court to appoint the list presented by the committee.

After discussing the validity of the acts of the committee as constituted and whether the member was entitled to fiill the vacancy and act as a *de facto* officer, the court issued the writ of mandamus and stated:

".... This leads us to the conclusion that the list which the relators ask that the county court be compelled to appoint was properly certified, and that the chairman as such had no right on his own responsibility to disregard the will of the committee and certify a list, nor had the county court any power or authority to disregard the list certified by the seven members aforesaid, and appoint that presented by the county chairman, which did not even purport to be the action of the committee, but his own individual action."

In the case of *State* v. *Wayne County Court, supra,* just cited, the case of *Gainer* v. *County Court of Calhoun County* (W. Va. 1938), 199 S. E. 878, was followed.

For the aforesaid reasons the writ of mandamus lies and the Secretary of the Supreme Court is hereby ordered to issue a writ of mandamus against the defendant, Hon. Rexford Guy Tugwell, ordering him to appoint forthwith, Luis A. Archilla Laugier and José Enrique Gelpí, as regular member and substitute member, respectively, of the Liberal Party of Puerto Rico in the Insular Board of Elections of Puerto Rico.

---

ORDER

April 26, 1944

On the 21st instant the attorneys for the respondent filed a motion in this case, requesting that we amend that portion of our opinion in which it was stated that the respondent had alleged but failed to prove that when he received

the petition from the central committee the appointments in favor of the persons designated by the President of the Liberal Party had already been issued. Said attorneys maintain that such a statement might suggest negligence on their part, and that that portion of the opinion is inaccurate, inasmuch as they have attached to their answer numerous exhibits—which they describe—tending to establish those particulars.

Said exhibits were not introduced in evidence and, consequently, although attached to the answer, they constituted no evidence for the respondent.

Since the case was originally filed in this court, the Rules of Civil Procedure, which took effect in the courts of Puerto Rico on September 1, 1943, are applicable herein. Hence, it seems advisable to direct the attention of the petitioning attorneys to the provisions of Rule 10(c) which read as follows:

"Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading *is a part thereof for all purposes.*" (Italics ours.)

That was why we stated that the respondent had alleged but failed to introduce evidence in support of his allegation, since it was incumbent on him to offer the exhibits in evidence if he desired to prove the facts stated therein. It would have been unnecessary to introduce the exhibits in evidence if this court, in the exercise of the power granted to it by Rule 7(a), had required the filing by the petitioners of a reply to the answer and in such reply the truth of the contents of the said exhibits had been admitted by the petitioners.

But, as the petitioners were not required to file a reply to the answer, the exhibits attached to that pleading, like any other averment therein, must be taken as denied, in accordance with Rule 8(d).

For the reasons stated the "Motion for Amendment of Opinion," filed on April 21, 1944, by respondent's attorneys, must be denied.